470 P.2d 469

**STATE of Arizona, Appellee,**

v.

**Paul SIMON and Cynthia Simon, Appellants.**

**Nos. I CA–CR 246, I CA–CR 223.**

Court of Appeals of Arizona, Division 1.

June 17, 1970.

Rehearing Denied July 24, 1970.

Gary K. Nelson, Atty. Gen., by Carl Waag, Asst. Atty. Gen., Phoenix, for appellee.

Miller & Haggerty, by Philip M. Haggerty, Phoenix, for appellants.

HOWARD, Chief Judge.

Defendants Paul and Cynthia Simon were tried two times on three counts. In a first trial, cause No. 54981, they were found guilty of illegal possession of marijuana. Defendant Paul Simon was sentenced to not less than three nor more than four years. His wife received a suspended imposition of sentence. In a second trial, cause No. 54982, both defendants were found guilty on two counts of (1) possession of a narcotic and (2) possession of LSD. Defendant Paul Simon received two concurrent sentences of three to five years. Cynthia Simon received a suspended imposition of sentence as to the narcotics possession count and was given one to two years on the LSD count. Appeals by both defendants from both trials were made. Since the issues involved in both appeals are identical, the two appeals are consolidated for consideration here.

The basic issue presented for review here is whether the search warrant and evidence admitted at trial thereunder was constitutional.

Construing the facts in a light most favorable to sustaining the trial court, they are as follows.

In the late evening hours, three narcotic officers met with a Scottsdale justice of the peace for the purpose of obtaining a search warrant. They obtained the warrant and proceeded to defendants' home. Their return of service of the warrant revealed discovery of 17.9 grams of marijuana, LSD pills, tablets of oxycodone and

pure opium, and general narcotic paraphernalia.

▮ Defendants' major approach throughout the proceedings following the search was to attack the legal propriety of the search warrant. We therefore, inquire as to its propriety. The United States Supreme Court has laid down a two-pronged test for evaluating the constitutionality of a search warrant. Aguilar v. State of Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964); Spinelli v. United States, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969); State v. Ramos, 11 Ariz.App. 196, 463 P.2d 91 (1969). The magistrate must be presented with (1) facts showing the informant is reliable, and (2) the underlying circumstances on which the substance of the "tip" is made. As further clarified in *Spinelli,* supra, the magistrate must also generally assure himself that the information is not merely based upon casual rumor or the individual's general reputation.

▮ The evidence which an appellate court may use in applying the Supreme Court tests is usually twofold. Under Arizona cases, the court can look to the affidavit underlying the warrant and any sworn testimony given the magistrate in support of this affidavit. State v. Watling, 104 Ariz. 354, 453 P.2d 500 (1969); State v. Greenleaf, 11 Ariz.App. 273, 464 P.2d 344 (1970). The sworn testimony can be evidenced by a transcript of the hearing before the magistrate, but usually it is found in testimony given at other subsequent hearings. This is true in the instant case so we therefore, examine the entire record, with its various transcripts in particular that of the motion to suppress, to determine whether the magistrate had the appropriate evidence presented to him.

To begin, the magistrate was submitted the following affidavit:

"The possession of which property is a felony; is being used as the means of committing a felony and which property is possessed with the intention of using it as the means of committing the crime of illegal possession of marijuana. And

'that the facts tending to establish the foregoing grounds for issuance of a Search Warrant are as follows: Lt. Ralph McMillen of the Arizona State Dept. of Liquor Licenses & Control advises that Paul Simon & Cynthia Simon residing at 5127 E. Indian School Road *do have in their possession a usable amount of narcotics* (marijuana)." (Emphasis added)

We believe this alone is clearly insufficient as its statements are mere conclusions. We, therefore, look to the sworn oral testimony given the magistrate. First, we have a transcript of the preliminary hearing which contains some questioning of Officer Cozad as to what he recounted to Judge Holcomb. He recited that he had been asked a series of questions and he affirmed the truth of the affidavit. Officer Cozad stated:

\* \* \* \* \* \*

"A Judge Holcomb questioned me, sir, reference the affidavit and if the information on the affidavit was true, to the best of my knowledge.

Q You say he questioned you. Was that what he asked you, if the information on the affidavit was true to the best of your knowledge?

A Yes, sir. And, he also, as near as I can recall, had a check list of certain items that he asked me.

Q Tell us what he asked you, please.

A I don't recall exactly what he did ask me, sir. He asked me if the information, if I felt the information was reliable—I am sorry, sir, I can't recall exactly what he did ask me.

\* \* \* \* \* \*

Q And then, Officer, to the best of your knowledge, you have toldus [sic] everything that was said between you and Judge Holcomb and everything that was done at the time that you went to Judge Holcomb's office until the time you left concerning this affidavit of search warrant and the search warrant itself; is that correct?"

Subsequently, but prior to the first trial, defendants made a motion to suppress the evidence seized under the warrant. A transcript of that hearing is in the record. Both Officer Cozad and the magistrate testified.

Judge Holcomb testified that his routine was to ask a list of questions; the list was admitted into evidence. He had no recollection of the specific answers to the questions except those which could be ascertained from some notes he took, which notes were also admitted into evidence. Counsel went through the list of questions with the judge, but, again his recollection of the answers was limited to his notes and the affidavit, both being conclusions. For example, the judge was questioned as follows:

\*   \*   \*   \*   \*   \*

"Q May I ask your next question that you asked the individuals?

A What are the underlying circumstances supporting your conclusions in this matter.

Q All right, sir, may I ask you now what response did you get?

A Well, from the record here it seems that the information was that McMillen, through a reliable informant, knows of this circumstances [sic], and that the materials are in their possession. That is my interpretation of the notes.

\*   \*   \*   \*   \*   \*

Q All right, sir. May I ask you then the next question that you propounded to these people?

A What proof do you have that there is probable cause to believe that the defendant has the property listed in your affidavit.

Q And was a response to that? [sic]

A I presume—I know there was, but I do not know what it was.

\*   \*   \*   \*   \*   \*

Q BY MR. MILLER: What was the next question, Mr. Holcomb, that you asked the witnesses?

A How did you learn that the items listed on the search warrant were in possession of the defendants?

Q Was there a response to that?

A I know there must have been, but I do not know what it was.

\*   \*   \*   \*   \*   \*

Q What was the next question, Judge Holcomb, please?

A Why do you believe your informant?

Q Do you remember asking that? And what was the response?

A I do not know the answer given.

Q What was the next question that you—

A Is your informer reliable.

Q What was the response to that?

A That, I do not know. But it must have been in the affirmative or I wouldn't have gone any further."

Officer Cozad testified as to his presentation to Judge Holcomb. He confirmed that much of the information had come from another officer, not then present, Lt. McMillen, and that he had little first-hand knowledge to recite. Ultimately, what he recited to the judge was as follows:

"A. What I told the Judge that does not appear in the affidavit for the search was that the residence had to be searched that night because information was that the narcotics would be gone the following day, and also that Mr. Simon had been arrested previously for narcotic charges. And that Lt. McMillan advised me that the informant who give [sic] him the informaton was reliable to him,

and did know for a fact that there was [sic] narcotics within the residence."

At the first trial defendants renewed their motion to suppress but no new evidence was presented. Defense counsel merely argued.

■ We have perused this record carefully and cannot find in it one shred of substantive factual evidence from which the magistrate could conclude there was probable cause to issue a search warrant. We say this despite the extensive attempts by counsel in hearings to elicit such factual responses. The magistrate and officer were totally unable to remember if any facts were discussed, and the record contains only conclusions.

We have held that a simple statement that the informant saw the narcotics in defendant's possession is enough to meet both the *Aguilar* tests, of reliability and underlying circumstances. Neither the officer nor the magistrate could say that this presentation was made. There was no evidence presented to the magistrate that in any way corroborated the informant's information. No observation of the defendants' home was taken.

The State argues that the requirements of *Aguilar* are met because the underlying circumstances giving verity to the officer's and informant's statements was the fact that defendants had been previously charged with narcotics violations. We must emphatically reject this contention. A prior record has no relevance to a person's guilt in fixing probable cause to issue a warrant for a different offense.

We therefore, must overturn the search warrant herein and reverse the defendants' convictions.

Judgment reversed.

KRUCKER and HATHAWAY, JJ., concur.

NOTE: This cause was decided by the Judges of Division Two as authorized by A.R.S. § 12–120, subsec. E.