490 P.2d 580

**STATE of Arizona, Appellee,**

v.

**Matthew Ray BYERS, Appellant.**

**No. 1 CA–CR 311.**

Court of Appeals of Arizona,
Division 1,
Department A.

Nov. 9, 1971.

Gary K. Nelson, Atty. Gen. by Albert M. Coury, Asst. Atty. Gen., Phoenix, for appellee.

Ross P. Lee, Maricopa County Public Defender by James H. Kemper, Deputy Public Defender, Phoenix, for appellant.

CASE, Judge.

This is an appeal from a judgment of conviction for possession of marijuana and a narcotic drug.

The facts necessary for a determination of this matter are as follows:

On or about May 9, 1968, Officer Harris of the Phoenix Police Department procured a search warrant from Phoenix Justice of the Peace John J. Murphy. The affidavit in support thereof stated:

"Affiant received information from a past proven reliable and confidential source that Matthew Ray Byers AKA 'BLUE' of 425 N. 13th Pl. is at this time in possession of a useable amount of narcotics (heroin) at his home, on his person, and in the described vehicle. Informant reports that Matthew Ray Byers also deals narcotics on the streets of Phoenix. Identity of the informant must not be revealed as revealment could result in

great bodily harm or death to the informant."

The affidavit described Byers' car as a "1961 Chev. Ariz. Lic. Hwy. 443" and sought a warrant to search Byers' home and car.

At approximately 11:00 p. m. on May 9, 1968, five officers of the Phoenix Police Department executed the search warrant. Matthew Byers was alone in his car outside the house and his wife, Linda, was inside the house. A systematic search of the car resulted in the discovery of a matchbox between the two front seats which contained two hand-rolled cigarettes which upon chemical analysis were determined to contain marijuana. The search of the house produced three or three and one-quarter white pills and a green leafy substance. The pills were discovered inside the sweat band of a felt type hat found on a portable heater in the living room. The green leafy substance was found in a cigarette pack inside a shirt pocket in a dresser drawer located in a small room between the living room and the bedroom. After a chemical analysis, the pills were determined to be a synthetic narcotic known as amidone, and the green leafy substance was marijuana.

Both Byers were arrested, given a preliminary hearing, bound over and eventually charged by information with possession of marijuana in violation of Section 36–1002.-05, A.R.S. and illegal possession of a narcotic drug other than marijuana in violation of Section 36–1002, A.R.S. Two addenda to the information also charged Matthew Byers with two prior convictions.

After a jury trial, both defendants were found guilty of both counts of the information. Matthew Byers was sentenced to from eight to ten years in the Arizona State Prison on each count, said sentences to run concurrently.

Defendant raises three questions but due to our determination of this matter only the first will be discussed.

1. Was the Search of Defendant's Home on May 9, 1968, Unreasonable and Therefore in Violation of His Rights under the Fourth and Fourteenth Amendments to the United States Constitution Because Based on an Invalid Search Warrant?

Defendant argues that the search warrant used in the instant case was invalid since it and the accompanying testimony given to the Justice of the Peace by Officer Harris failed to provide sufficient independent facts upon which the magistrate could independently judge the validity of the informant's conclusion stated in the warrant as required by Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964). In Aguilar, the Supreme Court adopted the following test:

"Although an affidavit may be based on hearsay information and need not reflect the direct personal observations of the affiant, Jones v. United States, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697, the magistrate must be informed of some of the underlying circumstances from which the informant concluded that the narcotics were where he claimed they were, and some of the underlying circumstances from which the officer concluded that the informant, whose identity need not be disclosed, see Rugendorf v. United States, 376 U.S. 528, 84 S.Ct. 825, 11 L.Ed.2d 887, was 'credible' or his information 'reliable'." 378 U.S. at 114, 84 S.Ct. at 1514.

■ Though the affidavit on its face is insufficient in the above regard, unquestionably said affidavit can be supplemented by sworn oral testimony of the complainant. Section 13–1444, A.R.S.; State v. Watling, 104 Ariz. 354, 453 P.2d 500 (1969).

■ Judge Murphy, the Justice of the Peace who issued the search warrant, testified at the motion to suppress that he had no independent recollection of any conversation with Sergeant Harris other than the questions he usually asked under such circumstances which were used to determine:

1. The basis the officer had for determining the reliability of the confidential informer, and

2. The specific information the officer had as to how the informant knew the items were in the place to be searched. Judge Murphy further indicated he could not remember the answers given by Sergeant Harris to these questions.

Sergeant Harris, during the motion to suppress, testified in part as follows:

"Q. Officer, on July 19, 1968, you testified at the preliminary hearing in this matter. On that date you told Judge Murphy that you had made about 28 cases with the same informant, and the number of convictions, you weren't positive of, but you estimated them at six or eight convictions. Would that be correct now?

A. As I recall, it was somewhere around 25 or 28 cases at the time, and I believe it was five or six convictions that I knew of.

Q. Did you have any other conversations or conversation with Judge Murphy at that time?

A. Yes, I told him that the informant had told me that Matthew Ray Byers, also known as Blue, and Sandy Smith, Jr., also known as Sandy Red, were in possession of heroin at 423½ North 13th Place, and that they also dealt on the streets from place to place.

Q. You told him that, or did you tell him that the informant told you that?

A. That the informant told me that, yes, sir.

Q. Actually you told him that he was dealing in narcotics out of two locations in Phoenix, is that correct?

A. More than two, yes, sir. 435 East Polk I believe was one address. That was for Sandy Red's home, and 423½ North 13th Place being the residence of Blue, and also at different locations in the city, yes, sir.

Q. And when you say Blue, you mean Matthew Ray Byers, the defendant?

A. Yes, sir."

The officer's testimony clearly establishes that he conveyed to the magistrate facts sufficient for the magistrate to determine the reliability of the informer, i. e., satisfying the first prong of Aguilar.

The second prong of Aguilar requires that when an affidavit is based on hearsay the magistrate be informed of some of the underlying circumstances from which the informant concluded the items to be seized were located where the informant indicated they were. This requirement was modified in Spinelli v. United States, 393 U.S. 410, 416, 89 S.Ct. 584, 589, 21 L.Ed.2d 637 (1969), as follows:

"In the absence of a statement detailing the manner in which the information was gathered, it is especially important that the tip described the accused's criminal activity in sufficient detail that the magistrate may know that he is relying on something more substantial than a casual rumor circulating in the underworld or an accusation based merely on an individual's general reputation."

The State argues that the detail of the affidavit, together with Sergeant Harris' testimony, satisfied Spinelli and cites us to State v. Boyer, 106 Ariz. 32, 470 P.2d 439 (1970). The facts in Boyer include the following:

1. The affidavit described specifically the car to be searched and indicated the property to be sought was marijuana, and other drugs and drug paraphernalia;

2. The magistrate testified that the officer, under oath, described the individual and the car; indicated that he had reason to believe the car was traveling from Tucson to Flagstaff with drugs; that there may be a gun in the car; and that the informant was reliable in that he had been used previously to secure a conviction;

3. The affiant and another officer present at the affiant's interrogation by the magistrate indicated the magistrate was also told the *informant's information came through association with the informant,* the dates Boyer left Flagstaff and when he was expected to return, the informant's information coincided with the officer's own surveillance data.

On the basis of the above underlying circumstances, the warrant was deemed sufficient to enable the magistrate to make an independent determination that probable cause existed.

In State v. Allen, 9 Ariz.App. 196, 450 P.2d 708 (1969), this Court upheld a warrant where the underlying facts were:

1. *The confidential informant had on the same day the warrant was issued purchased heroin from a resident of the apartment to be searched*;

2. The apartment resident told the informant she was running a "shooting gallery";

3. The seller was a known narcotics user;

4. Known narcotics addicts frequently visited the apartment; and

5. Seller resided with a person recently convicted on a narcotics charge.

■ The basic distinction between these cases and the instant case is obvious. In the two cases affirming the validity of the warrant, the magistrate was shown the connection the informant had to the suspect. In the instant case, all the affidavit contained was the name of the suspect, his address, a description and license number of his car, together with the conclusion that he was dealing in narcotics on the streets of Phoenix. There was nothing to show how the informant got his information, i. e., whether by rumor, by purchasing narcotics from the suspect, by observing the suspect selling narcotics or by being in the residence. The allegedly detailed facts could be secured by merely knowing the suspect's name, seeing him driving a car and checking the name for the address in the telephone book. There was no information describing any criminal activity other than the conclusory assertion that he was dealing in narcotics in Phoenix.

We are aware of the policy announced in United States v. Ventresca, 380 U.S. 102, 108, 85 S.Ct. 741, 746, 13 L.Ed.2d 684 (1965) as follows:

"If the teaching of the Court's cases are to be followed and the constitutional policy served, affidavits for search warrants, such as the one involved here, must be tested and interpreted by magistrates and courts in a commonsense and realistic fashion. They are normally drafted by nonlawyers in the midst and haste of a criminal investigation. Technical requirements of elaborate specificity once exacted under common law pleadings have no proper place in this area. A grudging or negative attitude by reviewing courts toward warrants will tend to discourage police officers from submitting their evidence to a judicial officer before acting."

The evidence of the defendant presented at the motion to suppress was sufficient to rebut the presumption favoring the validity of a search warrant. From the transcript of the motion to suppress, we find no evidence going to the manner in which the informant acquired his information nor sufficient detail "more substantial than a casual rumor" to support issuance of the warrant. Accordingly, we hold the warrant invalid, thus rendering the search pursuant thereto a violation of appellant's Fourth and Fourteenth Amendments rights.

Further supporting our position taken herein is the case of State v. Watling, 104 Ariz. 354, 453 P.2d 500 (1969). In that case, our Supreme Court inferentially held a warrant very similar to the instant one invalid on its face. The testimony at the motion to suppress in the instant case merely reiterated the information supplied on the face of the affidavit, thus making the issuance of the warrant based on such insufficient information invalid.

Since the search violated appellant's Fourth and Fourteenth Amendments rights, the evidence seized as a result thereof was inadmissible. Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961).

The judgment of conviction is reversed.

STEVENS, P. J., and DONOFRIO, J., concur.