494 P.2d 773

**The STATE of Arizona, Appellee,**

v.

**Raymond A. OSBORN, Appellant.**

**No. 1 CA–CR 276.**

Court of Appeals of Arizona,
Division 1,

Department A.

March 16, 1972.

Review Denied June 6, 1972.

**574**

Gary K. Nelson, Atty. Gen. by William P. Dixon, Asst. Atty. Gen., Phoenix, for appellee.

Ross P. Lee, Public Defender by Anne Kappes, Deputy Public Defender, Phoenix, for appellant.

DONOFRIO, Judge.

This is an appeal by defendant Raymond A. Osborn from a judgment of conviction entered on his plea of guilty to an amended information charging him with the offense of Obtaining Narcotics by Fraud or Deceit, a felony, and from a prison sentence of from one to three years imposed thereon.

The crucial question is whether the amended information states a public offense, for although defendant made no objection to the information at the time, if it fails to charge an offense it is a question of fundamental error. State v. Corvelo, 91 Ariz. 52, 369 P.2d 903 (1962); State v. Smith, 66 Ariz. 376, 189 P.2d 205 (1948).

Defendant's contention is that he was charged under A.R.S. § 36–1017, as amended 1963, which makes it a public offense to "obtain or attempt to obtain a narcotic drug" by fraud, deceit or concealment; that in order to invoke the sanction of the statute a narcotic drug as defined by the statute defining narcotic drugs must be involved; and that "Numorphan" involved herein is not named among the drugs defined as a narcotic drug by the applicable section, A.R.S. § 36–1001, as amended.

The pertinent charging part of the amended information reads as follows:

"The said RAYMOND A. OSBORN on or about the 16th day of May, 1969, and before the filing of this information at and in the County of Maricopa, State of Arizona, did then and there feloniously attempt to obtain a narcotic drug, to-wit: numorphan, by fraud, deceit, misrepresentation or subterfuge, to-wit: the said defendant did then and there present a forged prescription with the name of Dr. Samuel Rothman on the prescription, all in violation of A.R.S. Sec. 36–1017, as amended 1963; . . ."

Defendant argues that the information is defective in charging an offense in that "Numorphan" is not named among the drugs which are specifically defined in the statute as narcotic drugs, nor does the information set forth any facts from which it is possible to determine that Numorphan is included within any other statutory definition of a narcotic drug. On the other hand, the State argues that Numorphan is a narcotic drug of synthetic origin and is so classified by the Federal Narcotics Commissioner in the Federal Register, Vol. 36, No. 80, Part 2, under Schedule II of Narcotic Drugs, paragraph 308.12 (1971), and thus an offense is charged.

A rather painstaking search of the citation given in the Federal Register has failed to reveal the word "Numorphan". We assume the reason we are unable to find the above-mentioned drug is that the Federal Register lists narcotic drugs by the actual chemical ingredients contained with-

in the substance, and not by trade names. See 33 Fed.Reg. 14831 (Oct. 3, 1968). The fact that the narcotic compound in Numorphan is Oxymorphone, and the latter substance is listed in the Federal Register of 1968, supra, is a matter that was not mentioned at the preliminary hearing, nor was it mentioned at any time in this record, and is not a fact of which we can take judicial notice. United States v. Antikamnia Chemical Co., 37 App.D.C. 343, rev'd. on other grounds, 231 U.S. 654, 34 S.Ct. 222, 58 L.Ed. 419 (1914).

Subsection 14 of § 36–1001, A.R.S., defines narcotic drugs as follows:

"'Narcotic drugs' means coca leaves, opium, cannabis, isonipecaine, amidone, isoamidone, ketobemidone, any other drug of natural or synthetic origin that may be classified as a narcotic by the federal narcotics commissioner, and any substance neither chemically nor physically distinguishable from them."

We are therefore confronted with the question of whether a public offense is stated when a defendant is charged with a violation of A.R.S. § 36–1017 wherein the substance specifically mentioned in the information has not been listed as narcotic by the Federal Narcotics Commissioner.

■ In State v. A. B. Robbs Trust Company, 98 Ariz. 293, 404 P.2d 89 (1965), our Supreme Court held that an information or indictment pursuant to a vague and indefinite statute would deprive a defendant of due process under Article 2, § 4 of the Arizona Constitution. We are of the opinion that the portion of A.R.S. § 36–1001 that delegates authority to the Federal Narcotics Commissioner to determine what drugs are in fact narcotic is unconstitutionally vague as applied. Arizona courts have pointed out on numerous occasions that citizens should be able to determine what they may legally do and what is forbidden, and hence if men of common intelligence must guess at its meaning and differ as to its application, the statute is unconstitutionally vague, indefinite and uncertain. State v. Starsky, 106 Ariz. 329, 475 P.2d 943 (1970); State v. Smith, 103 Ariz. 490, 446 P.2d 4 (1968); State v. Berry, 101 Ariz. 310, 419 P.2d 337 (1966); State v. Locks, 97 Ariz. 148, 397 P.2d 949 (1964); State of Arizona v. Menderson, 57 Ariz. 103, 111 P.2d 622 (1941).

■ In order for a public offense under A.R.S. § 36–1017 to be committed, there is a requirement that the drug obtained be narcotic. This statute does not attempt to control the defrauding or deceit of druggists, and the specific intent to defraud or deceive need not be proven in order to convict under A.R.S. § 36–1017. State v. McFall, 103 Ariz. 234, 439 P.2d 805 (1968). The conduct prohibited is the misuse of narcotic drugs, therefore an individual may legitimately wish to apprise himself beforehand as to whether the drug he may attempt to obtain, by whatever method, is narcotic and hence subject to our criminal statutes that regulate its use. In order to make this determination, the person so inclined would have to embark on a rather complicated research chore which we will enumerate herein.

Assuming the individual knows only the trade name of the drug he desires, he must obtain the name of the chemical ingredients which compose the drug. This information, known as the nonproprietary designation, would be found normally by either questioning a pharmacist or by referring to a recent pharmacology text. Having made that initial determination, he must search Title 21, Chapter II, § 307.73, Code of Federal Regulations. This publication incorporates the information previously cited, i. e., the October 3, 1968 Federal Register, supra. To be certain that there have been no recent additions to that list, the person seeking information as to whether a drug has recently been declared narcotic by the Federal Narcotics Commissioner must inspect the annual index of the Federal Register under "Narcotics and Dangerous Drugs Bureau" and, furthermore, inspect the publication of the Federal Register for each day that has elapsed in 1972. We recognize that the

Federal Register is published five times a week and, most likely, does not have a widespread circulation in the state. Furthermore, the Federal Register would normally be found in a law library or a rather large urban library. Therefore it is probable that this information could not be obtained in many areas of Arizona.

In determining the clarity and narrowness of a statute, a very valid and vital concern must be whether the statute is dependent upon "manifold cross-reference to inter-related enactments or regulations". Landry v. Daley, D.C., 280 F.Supp. 938 at 953 (1968). In Keyishian v. Board of Regents, 385 U.S. 589, 604, 87 S.Ct. 675, 684, 17 L.Ed.2d 629 (1967), the United States Supreme Court stated:

> "Vagueness of wording is aggravated by prolixity and profusion of statutes, regulations, and administrative machinery, and by manifold cross-references to interrelated enactments and rules."

We are aware that the U.S. Supreme Court has reiterated recently that criminal statutes are subject to greater constitutional scrutiny when attacked on grounds of vagueness than regulatory statutes governing business activities. Papachristou v. City of Jacksonville, 405 U.S. ——, 92 S.Ct. 839, 31 L.Ed.2d 110 (1972). The test remains whether a criminal statute "fails to give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden by the statute." Papachristou v. City of Jacksonville, supra; United States v. Harriss, 347 U.S. 612, 617, 74 S.Ct. 808, 812, 98 L.Ed. 989 (1954).

The source of A.R.S. § 36–1001, Subsection 14, is the Uniform Narcotic Drug Act. It states:

> " 'Narcotic drugs' means coca leaves, opium, cannabis, and any other substance neither chemically nor physically distinguishable from them, and any other drugs, the importation, exportation or possession of which is prohibited, regulated or limited under the Federal Narcotic Laws, as existent on the date of

the event to which this statute is to be applied."

We feel that this statute, created by the Uniform Commissioners, is somewhat different in that it does not impose upon the average person the requirement to inspect the Code of Federal Regulations and the Federal Register up to the date that one intends to obtain a drug that could be narcotic. The prospective effects of A.R.S. § 36–1001, Subsection 14, are not present in the Uniform Act, yet it still requires a citizen to obtain the nonproprietary name and search out the Federal Register. While we need not rule whether the Uniform Act is constitutionally infirm in order to determine this appeal, it imposes much of the same onerous burden as does A.R.S. § 36–1001, subsection 14.

We are aware that A.R.S. § 36–1001, subsection 14, has been challenged previously on constitutional grounds of vagueness, and our appellate courts have upheld the law. State v. Curry, 97 Ariz. 191, 398 P.2d 899 (1965); State v. Farrell, 1 Ariz. App. 112, 399 P.2d 915 (1965). These cases, however, did not question the validity of the statute as applied to a drug not specifically enumerated within the text of the law as narcotic.

Defendant contends that A.R.S. § 36–1001, Subsection 14, is unconstitutional in that there is an unlawful delegation of legislative power to the Federal Narcotics Commissioner. In our research we find this issue involving a similarly worded statute in Colorado was mentioned, but their Supreme Court was reluctant to rule upon it. See Martinez v. People, 160 Colo. 333, 417 P.2d 485 (1966); People v. Stark, 157 Colo. 59, 400 P.2d 923 (1965). We likewise do not feel it necessary to pass upon the question. We would, however, recognize that the Bureau of Narcotics and Dangerous Drugs is an efficacious agency capable of making a skilled, accurate, comprehensive, and rapid analysis of each new synthetic drug concocted. Effective control of illegal trafficking in narcotics seems to mandate a joint enterprise with

this federal agency that has all the resources necessary to analyze a new compound for its narcotic ingredients. This expression is intended to clarify our position in the case at bar. In essence, we have held the portion of A.R.S. § 36–1001, Subsection 14, unconstitutional because it is so vague as to constitute a serious deficiency in what may traditionally be considered the notice aspects which we feel a criminal statute must contain.

We therefore hold that the part of Subsection 14 of A.R.S. § 36–1001 which gives power to the Federal Narcotics Commissioner to name substances that have been scrutinized and found to contain narcotic compounds, with said determination then binding upon our State's laws relative to what actually is a narcotic drug, is unconstitutionally vague, indefinite and uncertain.

The information upon which defendant was charged, and to which he subsequently plead guilty, did not state a public offense.

The judgment of conviction and sentence are set aside.

Reversed.

STEVENS, P. J., and CASE, J., concur.