501 P.2d 561

STATE of Arizona, Appellee,

v.

Lynn ADAMS, Appellant.

No. 1 CA–CR 400.

Court of Appeals of Arizona,
Division 1,
Department B.

Oct. 5, 1972.

Rehearing Denied Nov. 2, 1972.

Review Denied Jan. 16, 1973.

Gary K. Nelson, Atty. Gen., by William P. Dixon, and Thomas A. Jacobs, Asst. Attys. Gen., Phoenix, for appellee.

Kenneth J. Lincoln, Washington, D. C., for appellant.

HAIRE, Chief Judge, Division 1.

Defendant Lynn Adams appeals from the judgment of conviction and sentence entered by the trial court on charges involving the unlawful possession of marijuana and opium.

Her contentions on appeal are based entirely on the refusal of the trial court to grant her motion to suppress evidence allegedly obtained as a result of an unlawful search.

The pertinent facts are as follows. On November 16, 1969, an agent of the Arizona Department of Public Safety applied to a justice of the peace for a warrant to search the dormitory room of the defendant at Northern Arizona University in Flagstaff, Arizona. The warrant was served that evening by the agent and a fellow officer. The defendant was in her room along with a quantity of what was later determined to be marijuana and opium.

A motion to suppress evidence arising from the search was made by defendant, and after a hearing, the motion was denied.

Defendant advances several issues for consideration which boil down to two basic questions: 1) Did the affidavit presented to the magistrate show "probable cause" under the applicable constitutional standard to issue the search warrant? and 2) Were the Arizona statutory prerequisites for a nighttime search adequately shown?

The Fourth Amendment to the United States Constitution reads:

> "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and *no Warrants shall issue, but upon probable cause*, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." (Emphasis added.)

The United States Supreme Court has consistently expressed the opinion that it is far more preferable for the determination of probable cause to be made by "a neutral and detached magistrate" rather than by an officer engaged in the often competitive enterprise of ferreting out crime. Johnson v. United States, 333 U.S. 10, 14, 68 S.Ct. 367, 92 L.Ed. 436 (1948). Arizona requires that all search warrants be issued by a magistrate on a finding of probable cause. A.R.S. §§ 13–1441 thru 13–1443 (Supp.1971–72). Arizona law allows police officers to submit both written affidavits and sworn oral testimony to the

magistrate to show probable cause. A.R.S. § 13–1444 (Supp.1971–72); State v. Snyder, 12 Ariz.App. 142, 468 P.2d 593 (1970); State v. Boyer, 106 Ariz. 32, 470 P.2d 439 (1970). Such affidavits and oral testimony are tested by less vigorous standards than those governing the admissibility of evidence at trial. McCray v. Illinois, 386 U.S. 300, 87 S.Ct. 1056, 18 L.Ed.2d 62 (1967). Moreover, great deference is paid to a magistrate's determination of probable cause by reviewing courts. Jones v. United States, 362 U.S. 257, 80 S.Ct. 725, 4 L. Ed.2d 697 (1960). In Arizona it has been said that there is a presumption in favor of the validity of a search warrant. State v. Kelly, 99 Ariz. 136, 140, 407 P.2d 95 (1965). This presumption cannot, of course, overcome a constitutional infirmity. Ker v. California, 374 U.S. 23, 83 S.Ct. 1623, 10 L.Ed.2d 726 (1963).

It is accepted police practice to use confidential informants, especially in the control of illegal drug sale and use. In order to obtain search warrants which are crucial to searching for and seizing illicit drugs, police officers must often rely upon the tips supplied by informants to establish probable cause. The United States Supreme Court has sanctioned this practice within certain bounds. Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964); Spinelli v. United States, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969); United States v. Harris, 403 U.S. 573, 91 S.Ct. 2075, 29 L.Ed.2d 723 (1971). By setting definite standards for the issuance of search warrants the courts are attempting to achieve a delicate but important balance between the right of the average citizen to be safe and secure from unreasonable intrusions into his private life and the need of society to be protected by vigorous and efficient law enforcement.

In Aguilar, *supra*, the United States Supreme Court held that before a search warrant could be issued on hearsay information:

> " . . . *the magistrate must be informed of some of the underlying cir-*

*cumstances from which the informant concluded that the narcotics were where he claimed they were, and some of the underlying circumstances from which the officer concluded that the informant, . . . was 'credible' or his information 'reliable.'* Otherwise, 'the inferences from the facts which lead to the complaint' will be drawn not 'by a neutral and detached magistrate,' as the Constitution requires, but instead . . . by an unidentified informant." (Emphasis added.) 378 U.S. at 114–115, 84 S.Ct. at 1514.

It was not, however, the intention of the United States Supreme Court to construct a hypertechnical standard. Spinelli v. United States, 393 U.S. 410, 419, 89 S.Ct. 584, 21 L.Ed.2d 637. Rather, it was intended that the affidavits and sworn testimony submitted by the officer in the field be weighed in a common sense and realistic fashion. United States v. Ventresca, 380 U.S. 102, 108, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965).

What the Supreme Court was trying to prevent was a situation similar to the one, where a:

". . . police officer who arrived at the 'suspicion,' 'belief' or 'mere conclusion' that narcotics were in someone's possession could not obtain a warrant. But he could convey this conclusion to another police officer, who could then secure the warrant by swearing that he had 'received reliable information from a credible person' that the narcotics were in someone's possession." 378 U.S. at 114 n. 4, 84 S.Ct. at 1513.

The most recent case dealing with the use of informants which has come down from the United States Supreme Court is United States v. Harris, *supra*. In it the Court applied the Aguilar test to an affidavit which stated:

" 'Roosevelt Harris has had *a reputation with me for over 4 years as being a trafficker of nontaxpaid distilled spirits, and over this period I have received numerous information [sic] from all types* of persons as to his activities. Constable Howard Johnson located a sizeable stash of illicit whiskey in an abandoned house under Harris' control during this period of time. This date, I have received information from a person who fears for their [sic] life and property should their name be revealed. *I have interviewed this person, found this person to be a prudent person, and have, under a sworn verbal statement, gained the following information: This person has personal knowledge of and has purchased illicit whiskey from within the residence described,* for a period of more than 2 years, and most recently within the past two weeks, has knowledge of a person who purchased illicit whiskey within the past two days from the house, has personal knowledge that the illicit whiskey is consumed by purchasers in the outbuilding known as and utilized as the "dance hall," *and has seen Roosevelt Harris go to the other outbuilding, located about 50 yards from the residence, on numerous occasions, to obtain the whiskey for this person* and other persons.' " (Emphasis added.) 403 U.S. at 575–576, 91 S.Ct. at 2078.

No other information was furnished to the magistrate. In upholding the issuance of the search warrant the court observed:

"While a bare statement by an affiant that he believed the informant to be truthful would not, in itself, provide a *factual* basis for crediting the report of an unnamed informant, we conclude that *the affidavit in the present case contains an ample factual basis for believing the informant which, when coupled with affiant's own knowledge of the respondent's background, afforded a basis upon which a magistrate could reasonably issue a warrant."* (Emphasis added.) 403 U.S. at 579–580, 91 S.Ct. at 2080.

In the case at bar we are again confined to the written affidavit. Although sworn oral testimony was given by the agent in support of his affidavit, neither he nor Judge Brierley could remember specifically

what was said more than a year later at the suppression hearing. State v. Byers, 16 Ariz.App. 3, 490 P.2d 580 (1971).

■ The pertinent portion of the affidavit reads as follows:

"That your Affiant is a Peace Officer of the State of Arizona assigned to Coconino County for the purpose of investigating narcotic offenses. That your Affiant was contacted by a confidential reliable informant. That said informant is reliable by virtue of the fact that this informant has on three separate occasions within the previous 30 days supplied information concerning the identities of individuals who were involved in the sale of narcotic drugs, further that on all three occasions said informant has purchased narcotic drugs from these individuals while under surveillance of your Affiant and delivered said drugs to your Affiant. Further that on numerous occasions said informant has given information to your Affiant and your Affiant's fellow officers regarding narcotic offenses, which through independent investigating has proved reliable.

"Your Affiant has been contacted within the previous 48 hours by said informant. Your Affiant has been advised by said informant that Lynn Adams is involved in the sale of narcotic and dangerous drugs. That said *informant has personal knowledge that Lynn Adams is in possession of a quantity of marijuana* (hashish), that this marijuana (hashish) is being hidden by Lynn Adams in her room, Number 372 at University Quadrant Dormitory, Northern Arizona University. Further that said *informant did purchase within the past 48 hours a quantity of marijuana (hashish) from Lynn Adams at University Quadrant Dormitory, while under the surveillance of your Affiant, and did deliver said marijuana (hashish) to your Affiant.*" (Emphasis added.)

The first prong of the Aguilar test which we must apply to these facts asks what the underlying circumstances are from which

the informant concluded that the marijuana was in Lynn Adams' apartment. 378 U.S. 108, 114, 84 S.Ct. 1509.

The affidavit states that the informant has "personal knowledge" that a quantity of marijuana was in appellant's room. In addition, the informant purchased marijuana at the dormitory where appellant resided and was observed in the transaction by the agent. In Harris, *supra,* the informant saw Harris go to an outbuilding to obtain whiskey and saw whiskey in the house. Both places were eventually searched. In the case at bar the magistrate was not given any information as to how the informant knew marijuana was in the particular room which was eventually searched and in this respect is weaker than the facts in Harris. On the other hand, this case is stronger than Harris in that the agent saw the appellant sell marijuana at her dormitory. There was no official corroboration of the general location and fact that the suspect had possession of an illegal substance in Harris.

In closely analogizing the facts of Harris with the present case we find that the two cases are about equal in the degree to which they satisfy the first prong of Aguilar. In both cases the "underlying circumstances" from which the informant concluded that the illegal substance was where he claimed, were "ample" but, as we read Harris, not sufficient to establish probable cause standing alone. 403 U.S. 573, 579–580, 91 S.Ct. 2075.

We must then consider the second prong of the Aguilar test which measures "the underlying circumstances from which the officer concluded that the informant . . . was 'credible' or his information 'reliable'". 378 U.S. at 114, 84 S.Ct. at 1514. In Harris the officer relied upon his own knowledge of the suspect, which corresponded with the informant's tip, to demonstrate the reliability of his information. The facts in the case at bar are much stronger. Not only did the agent have at least three previous occasions to check the reliability of the information which the in-

formant gave but he actually observed the suspect with the informant making a marijuana sale within 48 hours before the issuance of the search warrant.

When both facets of the Aguilar test are weighed together, we believe that reasonable grounds exist for a neutral and detached magistrate to conclude that probable cause existed to believe that marijuana was in the appellant's room. As in Harris the crucial factor is the affiant's own knowledge of the suspect. As the court in Harris said:

"... we conclude that the affidavit in the present case contains an ample factual basis for believing the informant which, *when coupled with affiant's own knowledge of the respondent's background*, afforded a basis upon which a magistrate could reasonably issue a warrant." (Emphasis added.) 403 U.S. at 579–580, 91 S.Ct. at 2080.

In Harris the affiant's knowledge of the suspect was based largely upon reputation. In this case the agent had first-hand knowledge which was less than 48 hours old that the suspect had made a sale of marijuana in the dormitory. In our opinion this more than compensates for the fact that the informant did not explain how he or she[1] acquired the "personal knowledge" that marijuana was in the defendant's room.

We next turn to defendant's contention that the affidavit did not measure up to the then effective provisions of A.R.S. § 13–1447, which read:

"The magistrate shall insert a direction in the warrant that it be served in the day time, *unless the affidavits are positive that the property is on the person of the party, or in the place to be searched,* in which case he may insert a direction that the warrant be served at any time of the day or night." (Emphasis added.)

[Note: § 13–1447 was amended in 1970. *See* A.R.S. § 13–1447 (Supp.1971–72)].

Defendant contends that the affiant had no "positive knowledge" that the marijuana was in the dormitory room and that therefore a warrant should not have been issued for service at night.

As construed, § 13–1447 which was then in effect did require a higher standard for the issuance of a nighttime search warrant than constitutional probable cause. State v. James, 10 Ariz.App. 394, 459 P.2d 121 (1969). However, the statute required only that *the issuing magistrate be positive* that the marijuana was in defendant's room. State v. James, 10 Ariz.App. 394, 397, 459 P.2d 121.

The superior court held a suppression hearing at which the issuing magistrate testified. The court determined that the warrant was validly issued. We believe that there are sufficient facts in the record to support the superior court's conclusion that the magistrate was "positive" and we will not disturb that finding on appeal. State v. James, 10 Ariz.App. 394, 397, 459 P.2d 121.

The judgment of the superior court is affirmed.

EUBANK and JACOBSON, JJ., concur.

---

1. From the affidavit the sex of the informant is not disclosed.