512 P.2d 600

**STATE of Arizona, Appellee,**

v.

**Chaton PETERSON, Appellant.**

**No. I CA–CR 483.**

Court of Appeals of Arizona,
Division 1, Department B.

July 24, 1973.

Rehearing Denied Aug. 27, 1973.

Review Denied Oct. 9, 1973.

Ross P. Lee, Public Defender, Maricopa County, by James H. Kemper, Deputy Public Defender, Phoenix, for appellant.

EUBANK, Presiding Judge.

Appellant seeks review of the denial of her motion to suppress certain evidence seized pursuant to a search warrant which, she contends, was based on an affidavit that did not contain sufficient facts to support a finding of probable cause. We are also asked to determine whether an information which charges possession of a narcotic drug, Numorphan, in violation of A.R.S. § 36–1002, states a public offense.

On the evening of May 10, 1971, an agent of the Arizona Department of Public Safety applied to the justice of the peace for a warrant to search the residence of appellant. The warrant was issued solely on the basis of the officer's eight page affidavit and was executed early the next morning by the agent and a fellow officer. The search revealed various paraphernalia common to drug use and a quantity of methamphetamine and Numorphan, all of which were the subject of appellant's motion to suppress.

Appellant was arrested, and following her preliminary hearing entered pleas of "not guilty" to both counts of the information, which charged her in Count I with the unlawful possession of a dangerous drug (methamphetamine), and in Count II with the possession of a narcotic drug (Numorphan).[1] She was tried by the court, sitting without a jury, on the basis of the transcripts of the previous hearings and stipulations and was found guilty on both counts. The trial court treated Count I as a misdemeanor and sentenced her to one year for confinement in the county jail. Count II was treated as a felony but the sentence was suspended and she was placed on probation for two years. The trial court entered a Certificate of Probable Cause thereby staying execution of the sentence.

A review of Officer Pruitt's affidavit in question reveals four areas of knowledge: information relating to a search and arrest

Gary K. Nelson, Atty. Gen., by William P. Dixon, Asst. Atty. Gen., Phoenix, for appellee.

---

1. Originally charged as Oxymorphone but amended by stipulation of the parties.

of appellant some three months previous; information relating to her continued drug trafficking and drug use since her prior arrest; information relating to recent surveillance of appellant's residence; and information tending to support the necessity of a "no knock" warrant.[2]

■ In order to determine whether the facts presented to the magistrate justified his conclusion that there was probable cause to believe that the contraband sought was on the person or premises to be searched at the time the warrant was issued, we are required to examine the affidavit in detail. The affidavit, after describing the appellant, her residence and the property to be searched for, relates a prior search, incident to another warrant, conducted by affiant on January 26, 1971, of the same person and residence, at which time a useable quantity of methamphetamine and morphine was found. The sufficiency of this type of information is questioned by the appellant. While the date of this search may be too remote in time to indicate in and of itself the probability of the presence of drugs on the premises on May 10, 1971, it does constitute information that may be considered by the magistrate as evidence of a history of such presence, and together with other more recent evidence will support the affiant's belief that drugs would be found in the residence on May 10. In Brinegar v. United States, 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949), the United States Supreme Court in upholding a warrantless search approved the testimony by the searching officer that he had several months previously arrested the defendant for a similar offense. This holding was specifically approved in the more recent decision of United States v. Harris, 403 U.S. 573, 91 S.Ct. 2075, 29 L.Ed.2d 723 (1971).

In addition to the foregoing, the affidavit also states that on May 3, 1971, in response to a complaint of loud parties at the residence of the appellant, a surveillance was commenced by the affiant which was continued through May 7, 1971. The record of the surveillance shows that on May 3rd one person with a record of prior arrests for possession of marijuana and dangerous drugs entered the residence and another such person approached the premises and spoke into the intercom but did not enter. On the following day one known drug arrest records enter the residence. with prior drug connected arrests entered the residence. On May 5 five such persons were observed in the residence and on May 6 one such person was observed in the carport of the residence. On the last day of the surveillance a fellow officer of the affiant recognized two persons with prior drug arrest records entered the residence. During the surveillance several of the above persons were seen entering the premises in an apparent sober condition and leaving a short time later seemingly under the influence of narcotics.

Appellant maintains that consideration by the magistrate of all of the above information was precluded by the holding in State v. Simon, 12 Ariz.App. 321, 470 P.2d 469 (1970). A careful reading of that case indicates that the magistrate therein was given absolutely no basis on which to determine if the confidential informant was reliable and no underlying circumstances by which to support the officer's conclusion that the warrant should issue. The Court of Appeals thus had no alternative, when presented with the State's argument that the defendant's previous record would provide the required "underlying circumstances", but to conclude that a "prior record has no relevance to a person's guilt in fixing probable cause to issue a warrant for a different offense". (12 Ariz.App. at 325, 470 P.2d at 473). See Spinelli v. United States, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969).

■ In addition to various "informant" type statements which are unsupported by underlying circumstances, the affidavit

2. Appellant's objections at trial to the "no knock" provision of the warrant were abandoned on appeal.

here states that the affiant learned from a fellow officer that "two separate past proven reliable confidential informants whose information had resulted in at least ten arrests" had informed that officer that they "had purchased methamphetamine during the last week of April from Chaton Peterson and that there is a constant flow of drugs through the residence. . . ." The indication of the prior use of the informants and the description of the manner in which the informants gained their information combine to meet the well established test of Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964).

■ Reading the affidavit as a whole, the logical chain forming probable cause, is, in our opinion, complete: illegal drugs were found in the residence and in the possession of the appellant in late January 1971; drugs were illegally obtained from the appellant at the residence "during the last week of April"; and from May 3 through May 7, 1971, numerous persons with prior drug arrests were observed entering and leaving the premises, some in an apparent state of drug intoxication.

When the facts of the case *sub judice* were compared with those of State v. Simon, supra, it is clear that the result reached there is inapplicable here. Further, the type of information included in the affidavit here was the type of information approved in State v. Allen, 9 Ariz.App. 196, 450 P.2d 708 (1969). *See also* State v. Ingram, 251 Or. 324, 445 P.2d 503 (1968).

Following the advice of the Supreme Court in United States v. Ventresca, 380 U.S. 102, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965), and reading the affidavit in a common sense and realistic fashion without applying a hypertechnical standard, we find that it presents sufficient evidence upon which an impartial magistrate could have determined that probable cause existed to believe that illegal drugs were present on the premises and in the possession of appellant on the evening of May 10, 1971, and that he properly issued the warrant. *See also* State v. Endreson, 109 Ariz. 117, 506 P.2d 248 (1973); State v. Adams, 18 Ariz. App. 292, 501 P.2d 561 (1972).

■ Appellant next maintains that Count II of the information under which she was convicted is fatally defective in that it fails to state a public offense, and cites as authority the recent opinion of Department A of this Court in State v. Osborn, 16 Ariz.App. 573, 494 P.2d 773 (1972).

In *Osborn*, supra, the defendant was convicted of obtaining "a narcotic drug" by fraud in violation of A.R.S. § 36–1017, while the appellant here was convicted of possession of "a narcotic drug" in violation of A.R.S. § 36–1002, as amended. In any event, in both cases, reference must be made to A.R.S. § 36–1001, subsec. 14 in order to define a "narcotic drug". The subsection reads as follows:

> "14. 'Narcotic drugs' means coca leaves, opium, cannabis, isonipecaine, amidone, isoamidone, ketobemidone, *any other drug of natural or synthetic origin that may be classified as a narcotic by the federal narcotics commissioner*, and any substance neither chemically nor physically distinguishable from them." (Emphasis added).

In both the *Osborn* case and this one the "narcotic drug" in question is Numorphan, the trade name of the narcotic compound Oxymorphone. In *Osborn*, after describing the multi-step process through which an individual would theoretically have to go in order to apprise himself that the drug Numorphan was a narcotic and hence within our criminal statutes which regulate its use, Department A stated:

> "■ We therefore hold that the part of Subsection 14 of A.R.S. § 36–1001 which gives power to the Federal Narcotics Commissioner to name substances that have been scrutinized and found to contain narcotic compounds, with said determination then binding upon our State's laws relative to what actually is a narcotic drug, is unconstitutionally vague, indefinite and uncertain." (16 Ariz.App. at 577; 494 P.2d at 777).

The part of "Subsection 14 of A.R.S. § 36–1001" referred to is that portion underlined for emphasis, supra.

In an earlier decision, State v. Farrell, 1 Ariz.App. 112, 399 P.2d 915 (1965), Department A indicated that the alleged unlawful delegation of authority to a "federal narcotics officer" was severable from the remainder of subparagraph 14 and that therefore, if the delegation was unconstitutional, the remainder of subsection 14 would be constitutional. In *Farrell* it was not necessary to reach the constitutional question as in *Osborn*; consequently, it was not necessary to explain the basis for the conclusion of severability. In *Osborn* the severability was accepted as a fact but not explained. We believe the basis for severability is sound.

Prior to 1960 A.R.S. § 36–1001, subsec. 14 read:

"14. 'Narcotic drugs' means coca leaves, opium, cannabis, isonipecaine, amidone, isoamidone, ketobemidone and any other substance neither chemically nor physically distinguishable from them."

In 1960 the Legislature amended subsection 14, as we have seen, by inserting the clause, "any other drug of natural or synthetic origin that may be classified as a narcotic by the federal narcotics commissioner" after the word "ketobemidone" and before the word "and". It is this amendment that Department A struck down in *Farrell* and *Osborn*. Logically the amendment is severable from the statute as it existed prior to amendment since only the delegation of authority and vagueness resulted from the amendment and not from the original A.R.S. § 36–1001, subsec. 14 as it existed prior to 1960.

In further support of our conclusion and illustrative of the impractibility of such delegation of authority is the fact that in 1968 Congress completely did away with the office of the Federal Narcotics Commissioner and transferred all of its authority to the United States Attorney General. *See* Reorganization Plan No. 1 of 1968,

33 F.R. 5611, 82 Stat. 1367, effective April 8, 1968; cited in full, Historical and Revision Notes, 28 U.S.C.A. § 509 (1970).

 The case at bar is more like *Farrell* than *Osborn*, since here the appellant has stipulated that the drug Numorphan is a narcotic drug. Since under A.R.S. § 36–1001, subsec. 14, as amended, this issue would have been a matter of expert proof, and the necessity of proof was dispensed with by stipulation, we hold that Count II of the information was sufficient to charge the crime.

Affirmed.

JACOBSON, C. J., and HAIRE, J., concur.