522 P.2d 40

**STATE of Arizona, Appellee,**

v.

**Mary Evelyn COLLINS, Appellant.**

**No. 2 CA–CR 358.**

Court of Appeals of Arizona, Division 2.

May 15, 1974.

Rehearing Denied June 6, 1974.

Gary K. Nelson, Atty. Gen., by Michael C. Anderson, Asst. Atty. Gen., Phoenix, for appellee.

Debus, Busby & Green Ltd., by Jordan L. Green, Phoenix, for appellant.

OPINION

HATHAWAY, Chief Judge.

Defendant Mary Evelyn Collins appeals from a denial of her motion to suppress certain evidence consisting of a quantity of marijuana seized during a search pursuant to an allegedly invalid search warrant. The introduction of the evidence led to her conviction for possession of marijuana.

The affidavit in support of the search warrant reads in pertinent part:

"On Wednesday, May 30, 1973, at about 7:30 p.m., the Globe Police Department received an anonymous Crime Stop phone call in which the caller related that one Rocky Collins who lives in Central Heights was dealing (selling) in Heroin at the present time. On Wednesday May 30, 1973 at about 8:00 p.m., the Globe Police Department received another anonymous Crime Stop call, in which the caller related that one Rocky Collins was selling Heroin at his home in Central Heights. After the Globe Police Department received the second phone call, they call [sic] this Affiant (Jack Poeling) and advised him of the calls. After this Affiant received the call from the Globe Police Department, he along with C. B. Voelkel went to the area of the Collins home in Central Heights to observe the situation. Affiant and fellow officer did observe one Jim Painter, who is know [sic] to officers through informants to be using and dealing in Heroin in Globe-Miami area, drove [sic] up to the Collins home, got [sic] out of his 1965 Ford Mustang, Az. plate SBA–326, knocked [sic] on the door of the Collins home four times. The door was opened and at this time

Jim Painter went back to his vehicle and got a small bag out of his vehicle and returned to the Collins home and went back inside. This happened at about 2153 p.m. 5–30–73. At about 2155 p.m. one John Weatherman, who has been arrested by this Affiant for possession of Heroin drove up to the front of the Collins home, stopped and then drove off again.

Further, that affiant has and there is probable and reasonable cause to believe, and that he does believe and is reasonably positive that the aforementioned property is located at the place heretofore set out in this affidavit."

▮ The Fourth Amendment to the United States Constitution requires that search warrants be issued only upon a showing of probable cause supported by oath. The United States Supreme Court has made it clear that this calls for evidence sufficient to support a finding of probable cause by a neutral and detached magistrate. Johnson v. United States, 333 U.S. 10, 68 S.Ct. 367, 92 L.Ed. 436 (1948). The evidence must consist of facts or circumstances presented to the magistrate under oath or affirmation. Nathanson v. United States, 290 U.S. 41, 54 S.Ct. 11, 78 ·L.Ed. 159 (1933).

In Aguilar v. State of Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), the Supreme Court examined the adequacy of hearsay reports given to police by informants as a basis for a magistrate's finding of probable cause. The only "evidence" contained in the *Aguilar* warrant was a statement that the affiants had received reliable information from a credible person and believed that narcotics were being kept at the premises to be searched. The court concluded as follows (378 U.S. at 114, 84 S.Ct. at 1514, 12 L.Ed.2d at 729):

"Although an affidavit may be based on hearsay information and need not reflect the direct personal observations of the affiant, Jones v. United States, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697, the magistrate must be informed of some of the underlying circumstances from which the informant concluded that the narcotics were where he claimed they were, and some of the underlying circumstances from which the officer concluded that the informant, whose identity need not be disclosed, see Rugendorf v. United States, 376 U.S. 528, 84 S.Ct. 825, 11 L.Ed.2d 887, was 'credible' or his information 'reliable.' [footnote omitted]"

Defendant relies heavily upon the fact that the affidavit in the present case was based partially upon information received in anonymous "Crime Stop" telephone calls and that no "underlying circumstances" were presented to support either the reliability of each informant or their conclusions that heroin was being sold by Rocky

Collins. However, unlike the situation in *Aguilar*, the affidavit here contains, in addition to the statements of two informants, the results of police surveillance. In *Aguilar* the court noted that the results of a possible police surveillance were irrelevant to the decision since the police did not mention it in applying for the warrant. However the court made it clear that "[i]f the fact and results of such a surveillance had been appropriately presented to the magistrate, this would, of course, present an entirely different case." (378 U.S. at 109, 84 S.Ct. at 1511, 12 L.Ed.2d at 725, n. 1).

■ In Spinelli v. United States, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969), the court in considering the *Aguilar* requirements unanimously held that independent supporting information in the affidavit could establish probable cause by strengthening an otherwise unacceptable informant's tip. It is clear that this information may take the form of the results of police surveillance of the person accused by the informant. Spinelli v. United States, supra; Draper v. United States, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959).[1]

In *Spinelli,* the court held that once it is found that the unidentified informant's tip does not in and of itself pass the *Aguilar* requirement (i. e., "underlying circumstances" are lacking to show both the reason for the informant's conclusion that a crime has been committed as well as the informant's reliability), the magistrate should then consider other allegations in the affidavit which corroborate the tip and ask himself the following question:

> "Can it fairly be said that the tip, even when certain parts of it have been corroborated by independent sources, is as trustworthy as a tip which would pass *Aguilar's* tests without independent corroboration?" (393 U.S. at 415, 89 S.Ct. at 588, 21 L.Ed.2d at 643).

The warrant in *Spinelli* had contained a tip indicating that the suspect was conducting a bookmaking operation over two specifically listed telephone numbers. The additional independent evidence consisted of police observations of the suspect regularly going to and from an apartment, verification that the two telephone numbers given by the informant were listed under another's name at this apartment, and an assertion that the suspect was known to the affiant and others as a bookmaker. A plurality of the court concluded that the above-quoted test was not met relying largely upon the proposition that the observations of the police and the verifications of the telephone numbers disclosed only innocent activity and could not support even a suggestion of criminal conduct. (393 U.S. at 418, 89 S.Ct. at 590, 12 L.Ed.2d at 645). The court gave no weight to the officer's assertion that the suspect was a known gambler.

■ Defendant argues that since the warrant in *Spinelli* was found invalid, the warrant before us is invalid. She reasons that the police surveillance provided less information to corroborate the tip than the investigation in *Spinelli*.

In distinguishing the *Spinelli* holding, we first look to the nature of the tip which in that case was made by a "confidential informant". Underlying the constitutional requirement that a confidential informant's tip be accompanied by indicia of reliability is the implicit recognition that police informants are often inherently unreliable. They may have participated in illegal activity and are often given immunity from prosecution or lenient punishment in exchange for their tips. See United States v. Ventresca, 380 U.S. 102, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965); Jones v. United

---

1. One commentator has suggested that it be required for probable cause purposes that every undisclosed informant's tip be corroborated by a police investigation uncovering probative indications of criminal activity along the lines suggested by the informant. See Rebell, The Undisclosed Informant and the Fourth Amendment: A Search for Meaningful Standards, 81 Yale L.J. 703 (1972).

States, 105 U.S.App.D.C. 326, 266 F.2d 924, 928 (1959); Rebell, supra, n. 1, at 712–13. Here we are confronted with two confidential telephone calls by private citizens who clearly had nothing to gain in disclosing their information to the police. While this does not foreclose the possibility that the tips could have been falsely made as a prank or to harass the suspect, we find the tips somewhat more reliable than that given to the officer in *Spinelli*.

We cannot accept the argument that the police investigation outlined in the *Spinelli* affidavit supplied more reliability to the tip in that case than did the investigation presently before us. As noted above, the Supreme Court in *Spinelli* relied heavily upon the fact that the police investigation disclosed, at best, innocent, non-criminal activity on the part of the suspect. Here the magistrate was confronted with police observations of one known to them through informants to be a heroin user and dealer who, at night, suspiciously knocked upon the door of the residence, waited for an answer, returned to his vehicle, picked up a small bag, and took it into the house. Minutes later a person whom the officer had previously arrested for possession of heroin suspiciously stopped in front of the house and then drove off. We cannot say that this is innocent conduct which adds no reliability to tips given by two informants that a resident of the house was dealing in heroin.

While the *Spinelli* court, as noted above, gave no weight to a "flat statement" that the suspect was " 'known' to the F.B.I. and others as a gambler" (393 U.S. at 418, 89 S.Ct. at 590, 21 L.Ed.2d at 645), this line of reasoning was rejected in United States v. Harris, 403 U.S. 573, 583, 91 S.Ct. 2075, 2081–2082, 29 L.Ed.2d 723, 733 (1971), with the following language:

"We cannot conclude that a policeman's knowledge of a suspect's reputation— something that policemen frequently know and a factor that impressed such a 'legal technician' as Mr. Justice Frankfurter—is not a 'practical consideration of everyday life' upon which an officer (or a magistrate) may properly rely in assessing the reliability of an informant's tip. To the extent that Spinelli prohibits the use of such probative information, it has no support in our prior cases, logic, or experience and we decline to apply it to preclude a magistrate from relying on a law enforcement officer's knowledge of a suspect's reputation."

The above-quoted reasoning should be applied with equal force to a police officer's knowledge of the reputation of persons seen delivering small bags to the suspect's house or mysteriously stopping in front of it. Although in Sibron v. State of New York, 392 U.S. 40, 62, 88 S.Ct. 1889, 1902, 20 L.Ed.2d 917, 934 (1968), the Supreme Court rejected the notion that one's mere association with narcotics users can be a basis for probable cause that he is trafficking in or using narcotics, the court made it clear that the officer ". . . saw nothing pass between Sibron [the suspect] and the addicts". Here a small bag was taken into the suspect's home.

We reject defendant's contention that Arizona case law mandates a suppression of the evidence. State v. Watling, 104 Ariz. 354, 453 P.2d 500 (1969); State v. Byers, 16 Ariz.App. 3, 490 P.2d 580 (1971); and State v. Simon, 12 Ariz.App. 321, 470 P.2d 469 (1970) are all distinguishable since there was no evidence presented to the respective magistrates in those cases involving a police surveillance which tended to corroborate the tips or conclusions of the officers presented in the affidavit. See State v. Williamson, 20 Ariz.App. 397, 513 P.2d 686 (1973); State v. Peterson, 20 Ariz.App. 296, 512 P.2d 600 (1973).

We must answer in the affirmative the above-quoted question posed by the *Spinelli* court as to whether the tip, together with the corroboration by independent sources, is as trustworthy as one passing the *Aguilar* test without independent corroboration. We feel that the tips combined with the police surveillance in his case afford a ba-

sis for probable cause at least as solid as an affidavit meeting the *Aguilar* test.[2] It is clear that the magistrate, in weighing the facts and circumstances before him in a neutral and detached manner, properly concluded that probable cause existed to search the suspect's house.

Affirmed.

KRUCKER and HOWARD, JJ., concur.

2. An affidavit sufficient under *Aguilar* need only recite that the informant has given reliable information several times in the past leading to convictions together with a detailed description by the informant of the criminal activity taking place within the premises to

be searched (i. e., "two pounds of marijuana are being kept in the upper left drawer of the suspect's bedroom"). Here we have information, wholly independent of the informant's tips, as to highly suspicious activity taking place at the suspect's dwelling.