559 P.2d 167

**STATE of Arizona, Appellee,**

v.

**Charles Joseph CASTOE, Appellant.**

**No. 1 CA–CR 988.**

Court of Appeals of Arizona,
Division 1,
Department C.

Oct. 28, 1976.

Rehearing Denied Dec. 6, 1976.

Petition for Review Denied Jan. 4, 1977.

Bruce E. Babbitt, Atty. Gen. by Shirley H. Frondorf, Asst. Atty. Gen., Phoenix, for appellee.

Ross P. Lee, Maricopa County Public Defender by Anne W. Kappes, Deputy Public Defender, Phoenix, for appellant.

## OPINION

HAIRE, Chief Judge, Division 1.

On this appeal by the defendant from judgments of conviction and sentences imposed following jury verdicts of guilty on three counts of second degree burglary and three counts of grand theft, eleven questions have been raised as constituting grounds for reversal.

The charges against defendant resulted after he and a companion had attempted to sell several items of jewelry to a gemcutter who lived in a trailer in the same neighborhood as the trailer occupied by defendant's companion. The gemcutter, suspecting that the items were stolen, arranged to keep them for a few hours while purporting to consider their purchase. Actually he showed them to a Mesa police officer, and pictures of the items were taken, eventually leading to their being identified as having been stolen in three recent Mesa burglaries.

After defendant was arrested, he not only confessed to charges resulting from the Mesa burglaries, but also gave statements to a deputy from the Maricopa County Sheriff's Department relating to numerous other burglaries concerning which no charges were ever filed. Additional facts will be presented as pertinent to our discussion of the issues.

## I

## RIGHT TO ASSISTANCE OF COUNSEL

Defendant was represented by appointed counsel from the office of the Maricopa County Public Defender at the preliminary hearing and at all pre-trial proceedings. He was also represented by counsel from the Public Defender's office in his first trial. His first trial resulted in jury verdicts of guilty on all six counts, but a mistrial was declared when, upon a poll of the jury, one juror stated that she had agreed to the verdict under protest and that she was not completely convinced of defendant's guilt. The same attorney from the Maricopa County Public Defender's office continued to represent the defendant in preliminary matters prior to the defendant's second trial, and in fact filed numerous pre-trial motions on his behalf. After commencement of the second trial, and following the presentation by the state of the testimony of the victims of the crimes charged, a controversy arose between defendant and his appointed counsel because of appointed counsel's refusal to call the recanting juror from the first trial as a defense witness. This controversy was brought to the trial judge's

attention in chambers, and defendant told the judge that he wanted to have his counsel "fired". The defendant was then advised by the trial judge to the effect that his right to appointed counsel did not include the right to choose a specific lawyer, and that he must choose between representing himself and representation from the public defender's office. The defendant then requested that the trial judge appoint a different lawyer from the public defender's office. In denying this request, the judge stated that he had no control over which deputy the public defender assigned to the court. The judge then proceeded to advise the defendant that he could proceed in one of three ways:

(1) With appointed counsel handling the case for him;

(2) With appointed counsel sitting by available to assist him; or

(3) He could proceed without counsel.

The defendant insisted that he did not want to proceed with his present counsel, nor did he want his present counsel to sit by in an advisory capacity. He apparently felt that by taking that position he could stop the trial then and there. However, the trial judge quickly advised him that the trial would have to proceed with defendant acting as his own counsel if he refused to accept appointed counsel or his assistance, and, in view of defendant's adamant refusal to accept appointed counsel, the trial did in fact proceed from that point with defendant acting as his own counsel.

■ Based upon the foregoing facts, defendant contends that by forcing him to proceed without the aid of counsel, the trial judge in effect denied him his right to the assistance of counsel in violation of applicable federal and state constitutional provisions. The right of an indigent defendant to be represented by counsel appointed for him by the court is well established. *Gideon v. Wainwright*, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963); *Argersinger v. Hamlin*, 407 U.S. 25, 92 S.Ct. 2006, 32 L.Ed.2d 530 (1972). However, the accused may waive that right and has the right to represent himself. *Faretta v. California*,

422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975).

The methods by which these rights are afforded defendants in criminal proceedings in Arizona courts are set forth in Rule 6, Ariz.R.Crim.Proc. Rule 6.1(c) concerns the waiver by defendant of his right to counsel, and provides as follows:

"c. *Waiver of Rights to Counsel.* A defendant may waive his rights to counsel under (a) and (b), in writing, after the court has ascertained that he knowingly, intelligently and voluntarily desires to forego them. When a defendant waives his rights to counsel, the court may appoint an attorney to advise him during any stage of the proceedings. Such advisory counsel shall be given notice of all matters of which the defendant is notified."

 The record here demonstrates that defendant, being fully cognizant of his rights, knowingly, intelligent and voluntarily waived his right to the assistance of appointed counsel. *See State v. DeLuna,* 110 Ariz. 497, 520 P.2d 1121 (1974). Defendant points out that his waiver was not in writing as is required by the provisions of Rule 6.1(c), *supra.* In this regard it is our opinion that Rule 6.1(c) cannot be interpreted as requiring that in every instance the waiver of the right to counsel be in writing. Often, as is demonstrated by the facts in *State v. DeLuna, supra,* and the facts in this case, the waiver is fully evidenced by a defendant's conduct which is consistent only with a knowing and voluntary waiver. Under such circumstances, it would be nonsensical to expect the uncooperating defendant to voluntarily sign a written statement of waiver, even though his conduct, as here, would leave the court with no reasonable alternative but to proceed without representation for him. The requirement of Rule 6 that the waiver be in writing was not intended to afford an opportunity to a recalcitrant defendant to disrupt or delay the trial proceedings. This is evidenced by the provisions of Rule 6.1(d) which expressly allow the trial court to proceed without a written waiver where the defendant appears without counsel after having been given a reasonable opportunity to retain counsel. Similarly, a written waiver should not be made an absolute requirement under Rule 6.1(c), where the defendant's conduct as shown in the record evidences a voluntary and unrelenting refusal on his part to accept the assistance of counsel properly offered by the court. We conclude that defendant's right to the assistance of counsel was not violated.

## II

## DENIAL OF DEFENDANT'S REQUEST TO SUBPOENA A WITNESS

 We have previously indicated in this opinion that during the second trial a controversy arose between appointed counsel and defendant concerning appointed counsel's refusal to subpoena a juror from the first trial as a defense witness. After he had discharged appointed counsel, defendant presented to the court his request for a subpoena for this former juror, stating as a reason:

"THE DEFENDANT: 'Cause I believe that Mrs. Strubhar in the last trial was the juror that could not find me guilty, and I would like to have her on the stand to tell the Court and jury why she couldn't do it.' "

Leaving aside the procedural aspect concerning the defendant's failure to timely disclose to the state his intention to call this proposed witness, and accepting the defendant's statement as an offer of proof, we find no error inasmuch as the former juror's testimony would have been totally inadmissible. Such a juror's belief or reasons for believing the defendant innocent would be just as immaterial as would be the testimony of the eleven other jurors concerning their reasons for believing that the defendant was guilty.

## III

## ALLEGED VARIANCE IN PROOF OF GRAND THEFT CHARGES

 Defendant contends that the three convictions of grand theft are invalid be-

cause the information alleged theft from the husband members of the marital community, whereas the proof showed that most of the items stolen belonged to the wives. It is well-settled in Arizona that absolute title is not necessary; possession in the party from whom property is alleged to have been stolen is sufficient to sustain a conviction for larceny. *Pettit v. State,* 27 Ariz. 93, 229 P. 1036 (1924); *State v. Wilmore,* 10 Ariz.App. 443, 459 P.2d 531 (1969). Here the evidence showed the theft of various items of jewelry, most of which had been given to the wives by their testifying husbands. The thefts were from the residences occupied by both the husband and wives. Under these circumstances, we are of the opinion that a sufficient possessory interest in the named victims to sustain a charge of grand theft can be inferred from the evidence.

Even assuming a variance between the allegations of the information and the proof, we can perceive no prejudice to the defendant from this variance. There is no contention of surprise or that defendant was hindered in any way in preparing or presenting his defense. Under circumstances such as these, the provisions of Rule 13.5(b), Rules of Criminal Procedure, are particularly applicable.[1] *See also, State v. Smith,* 91 Ariz. 49, 369 P.2d 901 (1962); *State v. Colson,* 17 Ariz.App. 598, 499 P.2d 726 (1972); *State v. Fulper,* 16 Ariz.App. 357, 493 P.2d 524 (1972).

## IV

### CONTENTIONS CONCERNING DEFENDANT'S CONFESSIONS

■ Defendant confessed to having committed the three burglaries with which he was charged, giving separate signed written statements relating to each charge. He contends that the trial court should have granted his motion to suppress these statements because they were, defendant alleges, induced by police representations that they only wanted to "clear paper"[2] and that no charges would be brought against defendant on these burglaries. The facts as revealed in the testimony concerning the motion to suppress are somewhat complicated and will not be repeated here in evidentiary detail. The testimony of defendant was largely contradicted by the testimony of officers from the City of Mesa Police Department and a Maricopa County deputy sheriff. It is clear that defendant was asked to, and did, point out many additional residences within Maricopa County that he had burglarized. It is equally clear that he pointed out and admitted these additional burglaries upon the express understanding that if he did so, no charges would be brought on the additional burglaries. The issue presented in the motion to suppress proceedings was whether defendant had been promised that if he cleared paper on these additional burglaries and signed the confessions on the three Mesa burglaries, no charges at all would be filed against him.

The trial judge resolved the conflict in the evidence by expressly finding that the defendant's confessions were "not induced by any promises of any kind." There being substantial evidence to support the trial court's ruling we will not attempt to substitute our judgment for his. *State v. Sanders,* 101 Ariz. 410, 420 P.2d 281 (1966).

■ Notwithstanding the foregoing, defendant, citing *State v. McFall,* 103 Ariz. 234, 439 P.2d 805 (1968), and other authorities, urges that when a defendant reasonably believes that a promise has been made to him, even though no such promise in fact has been made, and this belief induced his statement, the statement cannot be con-

---

1. Rule 13.5(b) provides in part:
 "The charging document shall be deemed amended to conform to the evidence adduced at any court proceeding."
2. The term "clear paper" is used to indicate a situation where a suspect would give information concerning the commission of prior un-

solved crimes, thereby enabling the police to clear their books insofar as concerns future investigations relating to these unsolved crimes.

sidered voluntary. We find nothing in the record which would support the application of this principle. Assuming that the trial judge believed the police witnesses, as we must in view of his express findings, we are not confronted with any evidence, other than the testimony of the defendant, from which it could be inferred that defendant could have reasonably believed that he had been promised complete immunity in exchange for his statements involving the Mesa burglaries and the numerous other burglaries which he admitted committing. To the contrary, on the record presented, and particularly in view of the substantial evidence which the Mesa police had gathered linking defendant to the Mesa burglaries prior to the time he gave the statements in question, it would be unrealistic and unreasonable to infer that defendant harbored such a belief.

■ An additional contention raised by defendant concerning the admissibility of the confessions is that the police continued to question him after he stated that he did not want to talk to them. The evidentiary basis for this contention is not specified. We do note that the record shows that while at the Mesa Police Department shortly after defendant was initially given his Miranda rights following his arrest, defendant indicated that he did not want to talk to Detective Madaras of the Mesa Police Department any more; that he (defendant) would wait until the police officers came back from the execution of a search warrant; and then he might want to talk. There is nothing in the record to indicate that defendant was further questioned at that time, or at any time prior to the return of the officers from execution of the warrant. Further, there is nothing to show that defendant voiced an objection to being questioned thereafter. The court notes that at the top of each of the confessions written and signed by defendant, there is a printed paragraph which again advised defendant of his Miranda rights. Defendant in his own handwriting indicated that he understood these rights and that he was voluntarily answering questions at the time of the confessions. We find nothing in the record to indicate that defendant's rights in this regard were not scrupulously observed.

■ Citing *State v. Marovich,* 109 Ariz. 45, 504 P.2d 1268 (1973), defendant contends that the trial judge did not make a sufficient finding as to the voluntariness of his confessions. The trial judge's findings were as follows:

"The Court further finds that the defendant was apprised of his Miranda warnings on several occasions and all advised before any statements were made by him, either orally or in writing.

"The Court further finds that any statements made by the defendant were not induced by any promises of any kind."

In *Jackson v. Denno,* 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964), the court held that before a confession could be admitted in evidence, the trial judge should hold a hearing outside the presence of the jury and make a clear finding of voluntariness. This rule has been applied in several Arizona decisions, leading to reversals or remands because of noncompliance by the trial judge with the *Jackson v. Denno* dictates. *See State v. O'Dell,* 108 Ariz. 53, 492 P.2d 1160 (1972); *State v. Ramos,* 108 Ariz. 36, 492 P.2d 697 (1972); *State v. Dodd,* 101 Ariz. 234, 418 P.2d 571 (1966); *State v. Mileham,* 100 Ariz. 402, 415 P.2d 104 (1966); *State v. Costello,* 97 Ariz. 220, 399 P.2d 119 (1965); *State v. Owen,* 96 Ariz. 274, 394 P.2d 206 (1964). The latest decision by the Arizona Supreme Court in this area is *State v. Marovich, supra.* In that decision, the court discussed in detail its prior decisions, stating:

"The Attorney General ably and eloquently asks us to overrule some of these holdings, which he admits make the ruling in the instant case improper. His argument is that the judge's overruling of the motion to suppress was tantamount to a finding of voluntariness, and that to require the ruling to be a finding of voluntariness in so many words 'is to enshrine form over substance.' *The argument is persuasive where it is clear*

*that the judge understood Jackson v. Denno, supra, and merely worded his ruling badly.* But in the instant case, it is clear that the trial judge did not understand that the duty of finding the admission to be voluntary was his and his alone, since he said, when he ruled, that it was really up to the jury to make that determination. In any event, we think that having repeatedly followed the strict requirements of *Jackson v. Denno, supra,* from its decision right up to this year, we should not overrule the cases cited above." (Emphasis added). 109 Ariz. at 46; 504 P.2d at 1269.

Applying these principles we find the trial judge's ruling sufficient. A hearing on voluntariness outside the jury's presence was held, and it is clear from the following-quoted statements from the record that the trial judge knew that he had the obligation to determine whether defendant's statements were voluntary:

"THE COURT: We understand that. We want to know whether it's voluntary or not.

\* \* \* \* \* \*

"THE COURT: All I'm interested in knowing is whether up to the time that he signed these three statements, did he do so voluntarily? I don't think it's enough for a warning as such. Even after warnings are given, a promise might be made to induce them."

At the conclusion of the hearing, the trial judge's ruling went directly to the only challenge to voluntariness raised by the defendant—that his confessions were induced by promises of immunity—a finding that "any statements made by the defendant were not induced by any promises of any kind." Under the circumstances of this case, no clearer finding of voluntariness could have been made.

## V

### THE GRAND THEFT CHARGES

■ In addition to the three burglary charges, defendant was charged and convicted on three counts of grand theft aris-

ing from thefts committed during these burglaries. He now contends that, as an inducement to clear paper on the numerous other burglaries previously discussed in this opinion, he was told he would be charged with only the Mesa burglaries, with no mention being made of grand theft charges. It is his position that because of this agreement, the state is precluded from charging him with grand theft in addition to the three Mesa burglaries. We note some inconsistency between defendant's position here and that which he has taken in connection with the issue relating to the voluntariness of his confessions. There he took the position that as an inducement to confessing to the Mesa burglaries and to clearing paper on numerous other burglaries, he had been promised that *no* charges would be filed. The trial judge heard the evidence and obviously did not believe that any promises whatsoever had been made to defendant concerning prosecution on the Mesa burglary incidents. Keeping in mind the trial court's resolution of the evidentiary conflicts, we must assume that there was therefore no agreement to breach. The prosecution on the Mesa burglaries was completely independent of any arrangement which defendant might have had with the Maricopa County deputy sheriff relating to prosecution on the numerous other burglaries. Therefore, the state was at liberty to file whatever charges it deemed appropriate rising out of the Mesa burglary incidents.

## VI

### THE SEARCH WARRANT

A search of a house trailer, conducted pursuant to a search warrant, produced several items identified at trial as having been stolen during the Mesa burglaries. Defendant contends that these items should have been suppressed because (1) there was no showing in the affidavit that the unidentified informant was reliable, and (2) there was no showing from which it could be inferred that the items of jewelry would be on the premises named.

■ An averment of facts showing previous reliability is not always essential to show the reliability of an unidentified informant. *United States v. Harris,* 403 U.S. 573, 91 S.Ct. 2075, 29 L.Ed.2d 723 (1971). Such credibility or reliability can be inferred by the magistrate from corroborating facts observed by the affiant and set forth in the search warrant affidavit. *United States v. Harris, supra*; *State v. Million,* Ariz.App., 556 P.2d 338 (1 CA–CR 1529, filed September 23, 1976); *State v. Collins,* 21 Ariz.App. 575, 522 P.2d 40 (1974); *State v. Scott,* 11 Ariz.App. 68, 461 P.2d 712 (1970). Here, the affidavit in pertinent part stated:

"I.

"That on or about the 1st day of APRIL 1974, in the City of ———, County of Maricopa, State of Arizona, the crime of RECEIVING STOLEN PROPERTY (was) (and) (is being) committed by ED GRAY [defendant's companion] in the manner following to-wit:

"ED GRAY WAS OBSERVED BY A REPUTABLE PERSON IN THE POSSESSION OF RINGS WHICH MATCH THE DESCRIPTIONS OF RINGS TAKEN IN BURGLARIES IN MESA, AND ONE OF WHICH WAS IDENTIFIED BY THE VICTIM.

\* \* \* \* \* \*

"IV.

"That the following facts establish the existence of grounds for the issuance of a Search Warrant for the search of the persons, premises and buildings, and motor vehicles or trailer, described in Paragraph two (II) herein, and further establish probable cause for believing that said grounds exist.

"Your affiant has been a POLICE OFFICER for the past 3½ years and is now employed in such capacity by the MESA POLICE Department, and has acted and received the information set forth in this affidavit in that capacity.

"On the date of APRIL 1, 1974 at approximately 2145 P.M., your affiant FELLOW OFFICER, DET. CHITT received information from AGENT GATLIN OF THE DEPARTMENT OF PUBLIC SAFETY WHO RELATED THE FOLLOWING: ONE 4/1/74 AT APPROXIMATELY 2015 HOURS HE OBSERVED SIXTEEN PIECES OF DIAMOND JEWELRY IN THE POSSESSION OF A REPUTABLE/RELIABLE CITIZEN. THIS CITIZEN, WHO WISHES TO REMAIN ANONYMOUS FOR REASON OF PERSONAL SAFETY STATED THAT HE RECEIVED THE JEWELRY FROM A W/M/A KNOWN AS ED GRAY WHO RESIDES AT 925 S. 91ST PLACE, MESA. PHOTOGRAPHS WERE TAKEN BY AGENT GATLIN WHO SHOWED THEM, AND DESCRIPTION OF JEWELRY, TO YOUR AFFIANT'S FELLOW OFFICER ON 4/1/74. INVESTIGATION BY AFFIANT'S FELLOW OFFICER REVEALED THREE BURGLARIES COMMITTED IN MESA ON 4/1/74: 1. 1915 EAST FAIRFIELD, CASE # 74–8762; 2. 1029 NORTH FORREST, CASE # 74–8803; 3. 1032 NORTH FORREST, CASE # 74–8772. TAKEN FROM EACH OF THESE BURGLARIES WERE ITEMS OF DIAMOND JEWELRY. DESCRIPTION OF JEWELRY TAKEN WAS COMPARED WITH DESCRIPTION OF JEWELRY SEEN BY AGENT GATLIN. THE FOLLOWING PIECES WERE NOTED TO HAVE SIMILAR DESCRIPTIONS: [Descriptions omitted]."

The search warrant here in question was not based solely on an unidentified informant's unsupported tip.

■ This affidavit contains more than just the bald hearsay declaration of an unidentified informant. The reliability of the informant's declaration is bolstered by the corroborating facts, set forth in the affidavit, of the actual display of the jewelry itself to police officers and their subsequent identification of a portion of it as stolen property. In addition, the citizen informant here involved had nothing to gain from displaying stolen property to the police, which fact also gives some indicia of reliability to the informant. *State v. Col-*

lins, *supra*. *See also, State ex rel. Flournoy v. Wren,* 108 Ariz. 356, 498 P.2d 444 (1972). We hold that the information set forth in the affidavit furnished a sufficient basis from which the magistrate reasonably could have found the information reliable.

Concerning defendant's contention that there was no showing from which it could be inferred that the items of jewelry would be on the premises named in the search warrant, we first note that when testing the sufficiency of the search warrant affidavit, it must be interpreted in a common sense and realistic fashion. As stated in *United States v. Ventresca,* 380 U.S. 102, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965):

> "They are normally drafted by nonlawyers in the midst and haste of a criminal investigation. Technical requirements of elaborate specificity once exacted under common law pleadings have no proper place in this area. A grudging or negative attitude by reviewing courts toward warrants will tend to discourage police officers from submitting their evidence to a judicial officer before acting." 380 U.S., at 108, 85 S.Ct., at 746.

*See also, State v. Watson,* 113 Ariz. 218, 550 P.2d 89 (1976).

It is obvious that no warrant would be needed if the items were still in the possession of either the police or the cooperating informant. The search warrant states that the owner of the premises to be searched was "observed in possession" of some of the stolen items. The name and address of this person is given in the affidavit. From the confluence of these facts, the magistrate could logically infer that the jewelry had been returned to the possession of this person, and would be on those premises when the warrant was executed. We therefore reject defendant's contention that the affidavit was insufficient.

## VII

## THE LAWFULNESS OF DEFENDANT'S ARREST

We cannot agree with defendant's contention that his arrest was unlawful and that therefore items seized from the automobile he was driving at the time of his arrest, together with his subsequent confessions, should have been suppressed. Probable cause for an arrest without a warrant exists where the facts and circumstances within the arresting officer's knowledge are sufficient to warrant a reasonable belief that a crime has been or is being committed. *Beck v. Ohio,* 379 U.S. 89, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964); *State v. Williams,* 104 Ariz. 319, 452 P.2d 112 (1969). When viewed in the light of all the information before the arresting officers, we believe that the facts were sufficient to support a reasonable belief that defendant was in the possession of stolen property and was about to leave the state to sell it. When the police officers stopped defendant after he drove a Volkswagen away from the house trailer which the officers had under surveillance, they had reason to believe that:

(1) Pieces of jewelry matching the description of stolen jewelry had been in the trailer;

(2) The jewelry had been offered for sale the previous night to the informant for an amount far below its actual value; and

(3) The suspect had told the informant that the jewelry would be sold the next morning in Las Vegas. After all night surveillance of the trailer, during which nothing unusual had occurred, a Volkswagen drove up the next morning. The driver, defendant, went into the trailer, stayed about 20 minutes, and left with another man. They appeared to be carrying clothing, which they placed in the Volkswagen, and drove away. We find these circumstances established reasonable cause for the initial stop.

After the car was stopped, defendant was asked to get out. The officers saw a mace canister on his person, and the bulge of what appeared to be a concealed weapon. The officers knew that a mace canister of that type had been stolen in one of the burglaries. The bulge proved to be a .25 caliber automatic. We hold that these facts

furnished ample probable cause for the arrest of defendant and his companion, and the immediately ensuing search of his automobile.

## VIII

### DENIAL OF SPEEDY TRIAL

 Defendant contends that on his first trial he was denied his right to a speedy trial and that the charges should have been dismissed pursuant to the provisions of Rule 8, Rules of Criminal Procedure. If a period of delay relating to the determination of defendant's competency is entirely chargeable to defendant, and therefore excludable, there was no denial of defendant's speedy trial rights. The facts show that on May 2nd, the defendant moved for mental examination pursuant to Rule 11, Rules of Criminal Procedure. On June 21st, a competency hearing was set for June 25th. The minute entry for June 25th indicates that the defendant's mental condition was to be submitted to the court on the medical reports, with a formal, written stipulation to be prepared and submitted to the court. The record shows that this written stipulation was not prepared and submitted to the court by defense counsel until August 2nd. The reason for the delay in submitting the stipulation is not apparent from the record. The court ruled on the motion on August 12th. We note that Rule 11.5(a), Rules of Criminal Procedure, requires that stipulations to submit competency matters on the expert's report must be in writing.

Defendant acknowledges that he is chargeable with the reasonable time needed for preparing reports on medical examinations and for determining mental competency. However, he contends that he should not be charged with more than the period of time reasonably necessary, and that the matter of his competency should have been decided promptly upon the submission of the expert's reports.

Under Rule 8.4(a) the delay occasioned by defendant's examination and hearing to determine competency is expressly excludable, together with other delays occasioned by defendant. While defendant contends that the delay was not occasioned by his failure to submit the written stipulation, we find no other reason for the delay apparent in the record. We hold that this delay was chargeable to defendant and therefore the period from May 2nd to August 12th was excludable. Excluding such time, defendant's trial was held well within the time limits specified in the rules, and therefore defendant's right to a speedy trial was not violated.

## IX

### PREJUDICIAL PUBLICITY RESULTING FROM MISTRIAL OF FIRST TRIAL

 Defendant contends that media publicity regarding the circumstances of his original mistrial was sufficient to prejudice any jurors empaneled for the second trial. We cannot agree with this contention. Before this Court will disturb the trial court's denial of a change of venue, it must clearly appear that the trial court abused its discretion and that the defendant was prejudiced thereby. *State v. Ferrari*, 112 Ariz. 324, 541 P.2d 921 (1975); *State v. Narten*, 99 Ariz. 116, 407 P.2d 81 (1965). Publicity alone will not overcome the presumption that a defendant can be afforded a fair trial. *State v. Hunt*, 2 Ariz.App. 6, 406 P.2d 208 (1965). The trial judge's voir dire examination of jurors at the re-trial was sufficient to enable him to make a determination that they were not influenced by pretrial publicity.

Having found no reversible error among the many questions raised by the defendant, the judgments and sentences are affirmed.

FROEB, P. J., Department C, and EUBANK, J., concur.