592 P.2d 1278

**The STATE of Arizona, Appellant,**

v.

**Anthony WATKINS and Larry Watkins, Appellees.**

**No. 2 CA–CR 1484.**

Court of Appeals of Arizona, Division 2.

Jan. 11, 1979.

Rehearing Denied March 6, 1979.

Reviews Denied March 27, 1979.

Stephen D. Neely, Pima County Atty. by Richard J. Gonzales, Deputy County Atty., Tucson, for appellant.

John M. Neis, Pima County Public Defender by Donald H. Bayles, Jr., Asst. Public Defender, Tucson, for appellee Anthony Watkins.

Gary S. Kneip, Tucson, for appellee Larry Watkins.

OPINION

HOWARD, Judge.

This is an appeal from an order granting a motion to suppress. The issue is whether the information supplied by confidential informants was sufficiently corroborated by the independent observations of the arresting officer so as to meet the standards of probable cause set forth in *Aguilar v. Texas*, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964) and *Spinelli v. United States*, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969). We conclude that it was and the motion to suppress should not have been granted.

On January 25, 1978, Tucson Police Officers William Hurguy and Michael Mauser were advised by their supervisor that an unidentified informant had provided information concerning an armed robbery which was to occur later that evening. The tip indicated that sometime after dark on this date the Watkins brothers, Larry and Tony, would go to a home at 423 W. Thurber in Tucson, driving a white over blue 1975 Monte Carlo. The Watkins brothers were going to be armed with rifles and would be wearing ski masks. Their purpose was to "rip off" the occupants of the home at 423 W. Thurber while attempting to either buy or sell two ounces of heroin.

Sometime between 8:00 and 8:30 p. m. on January 25, Officers Hurguy and Mauser, assisted by other members of the Tucson Police Department, set up a surveillance of the house at 423 W. Thurber. This house is situated on the southwest quadrant of Thurber, which runs east and west, and Oracle Road, which runs north and south. Sometime between 8:00 and 8:45 p. m. the occupants of 423 W. Thurber were seen to

leave in a small compact pickup truck and return ten minutes later. At approximately 8:45 p. m. the officers observed a vehicle which matched the informant's description approach the area. The vehicle was northbound on Oracle Road when it turned west onto Thurber. It passed the house and continued west until it reached Fairview Avenue, where it made a U-turn and came back east again on Thurber. Approximately five or six houses away from 423 W. Thurber, the vehicle's headlights were turned off and it stopped briefly. The vehicle then started up and slowed down as it passed the house at 423 W. Thurber. It then left the scene southbound on Oracle Road.

At approximately 9:30 p. m., the surveillance group saw the lights at 423 W. Thurber go out. A half hour later the automobile observed earlier again approached Thurber and Oracle Road. It went west on Thurber towards Fairview, again made a U-turn, and headed towards Oracle Road. As it approached the 423 W. Thurber address it slowed and stopped. It then turned into the driveway of the business located directly across the street from 423 W. Thurber, backed out and parallel parked with the lights out along the curb across the street from 423 W. Thurber, facing west.

The two occupants of the vehicle got out and the driver was immediately identified as Larry Watkins. They engaged in some type of unidentified movement, and then proceeded across the street towards the home at 423 W. Thurber, approaching it on the north side. Because the lights had been turned off, the officers lost sight of them when they entered the shadows of the house.

Approximately ten to fifteen minutes later Larry Watkins' companion, later identified as Anthony Watkins, was observed coming out of the eastside door of the still-darkened house. He went across the street to the automobile, and then backed it to the door of the house. A short time later he was seen carrying out what appeared to be a television set and a stereo. These items were placed in the back seat and trunk of the vehicle.

Shortly thereafter, Anthony and Larry Watkins left, driving west on Thurber Road. They were stopped and arrested in the vicinity of Fairview and Thurber. Upon contacting the occupants of 423 W. Thurber it was determined that they had been robbed by two men, one of whom had a rifle. A stereo and television were taken. Subsequent investigation disclosed a loaded rifle in appellees' vehicle. No ski masks or narcotics were found.

 *Aguilar* and *Spinelli* invalidate a search warrant when the affidavit fails to show (1) that the informer was in fact a reliable person and (2) that the underlying circumstances by which he obtained his information were such that it was probably accurate. A warrantless search or a warrantless arrest requires the same investigative basis in fact or reasonable conjecture as does an arrest or a search under a warrant. See *Draper v. United States,* 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959); *Carroll v. United States,* 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925). The rule governing the facts of the case at bench is well expressed by Judge Friendly in *United States v. Canieso,* 470 F.2d 1224 (2nd Cir. 1972):

> "The lesson we draw from all this is that *Aguilar* applies with full rigor only when the search warrant or the arrest depends solely on the informer's tip. When a tip not meeting the *Aguilar* test has generated police investigation and this has developed significant corroboration or other '*probative indications of criminal activity* along the lines suggested by the informant,' . . . the tip, even though not qualifying under *Aguilar*, may be used to give such additional color as is needed to elevate the information acquired by police observation above the floor required for probable cause." (Emphasis in original) 470 F.2d at 1231.[1]

Arizona has not been silent on this point. In the case of *State v. Miller,* 112 Ariz. 95, 537 P.2d 965 (1975) the court stated:

---

1. In accord, *United States v. Myers,* 176 U.S. App.D.C. 76, 538 F.2d 424 (1976), cert. den.,

430 U.S. 908, 97 S.Ct. 1179, 51 L.Ed.2d 584; *United States v. Anderson,* 500 F.2d 1311 (5th

"It is required by *Aguilar v. Texas*, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), that an informant must be credible or reliable and that the circumstances underlying his information be stated. A law enforcement officer may go to the scene and wait to see if the situation unfolds as forewarned. *State v. Aikins*, 17 Ariz.App. 328, 497 P.2d 835 (1972). The underlying circumstances are then verified by the personal observations of the officers. *State v. Aikins*, 18 Ariz. App. 440, 503 P.2d 398 (1972)." 112 Ariz. at 97, 537 P.2d at 967.

■ Appellees have seized upon certain language in *State v. Ponce*, 16 Ariz.App. 122, 491 P.2d 845 (1971) as justification for the trial court's suppression of the evidence. In *Ponce* the court stated:

"For a law enforcement officer to establish probable cause based on information furnished by an informer, the two-pronged test of *Aguilar* must be satisfied. First, the facts must show that the informer is 'credible' or his information is 'reliable'. Second, the underlying circumstances on which the informer based his information must be set forth. When a showing of the underlying circumstances is not made, the basis of knowledge can be supplied by the investigating officer, if by his own observations, he is able to sufficiently verify *all* of the information contained in the tip. *Spinelli v. United States*, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969). However, it is not essential that the information supplied by the informant be verified in its entirety by the personal observation of the officer. The actual fact of the alleged activity does not have to be personally verified by the officer; rather the facts and circumstances must be such that the officer can draw an inference that illegal activity is afoot. See *Draper*, supra." (Emphasis added) (footnote omitted) 16 Ariz.App. at 123, 491 P.2d at 846.

Since the officers did not see them wearing ski masks and carrying rifles as per the information from the confidential informant, appellees contend there was no probable cause because *all* the information was not corroborated as required by *State v. Ponce*, supra. We do not agree. Appellees misread *Ponce*. In fact, the law is otherwise. An undisclosed informant's tip found wanting under the *Aguilar* test may provide the basis for a finding of probable cause if parts of it have been corroborated by independent sources. *United States v. Anderson*, supra; see also, *Spinelli v. United States*, 393 U.S. at 415, 89 S.Ct. 584; *United States v. Brennan*, 538 F.2d 711 at 720 (5th Cir. 1976), cert. den., 429 U.S. 1092, 97 S.Ct. 1104, 51 L.Ed.2d 538; *United States v. Larkin*, 510 F.2d 13 at 15 (9th Cir. 1974).

Although there is no concensus on the type of information required to corroborate an informant's tip, it is generally agreed that the better practice is to obtain corroboration of incriminating details. *United States v. Brennan*, supra; Moylan, Hearsay and Probable Cause: An *Aguilar* and *Spinelli* Primer, 25 Mercer L.Rev. 741 (1974). In *People v. Mercado*, 45 A.D.2d 699, 356 N.Y.S.2d 868 (1974) the court observed the following on this issue:

"A well considered analysis in the Brooklyn Law Review, 'The Second Circuit Review, 1972–73 Term', Vol. XL, Spring 1974, page 1180 on 'The Use of Informer Tips in Establishing Probable Cause For Search or Arrest—*United States v. Canieso*, 470 F.2d 1224 (2d Cir. 1972)' by Barry M. Goldstein considers that recent case and the underlying United States Supreme Court decisions and concludes that:

"When the tip cannot be made to fit within the *Aguilar* or *Spinelli* standards then the corroboration must involve more than a verification of innocent details. It must provide "proba-

Cir. 1974); *United States v. Lopez-Ortiz*, 492 F.2d 109 (5th Cir. 1974), cert. den., 419 U.S. 1052, 95 S.Ct. 630, 42 L.Ed.2d 647; *People v. Orozco*, 402 Mich. 849, 261 N.W.2d 532 (1978); *People v. Walker*, 401 Mich. 572, 259 N.W.2d 1 (1977); see, Rebell, The Undisclosed Informant

and the Fourth Amendment: A Search for Meaningful Standards, 81 Yale L.J. 703, 715–717 (1972); see also, Note, The Informer's Tip As Probable Cause For Search Or Arrest, 54 Cornell L.J. 958, 967 (1969).

tive indications of criminal activity" consistent with the information suggested in the tip. In such a case probable cause is found to exist, in the totality of the circumstances, when all relevant factors are considered.' (page 1188)" 356 N.Y.S.2d at 871.

However, some courts have held that an accumulation of innocent detail conforming to the original tip has corroborative value. See *United States v. Holliday*, 474 F.2d 320 (10th Cir. 1973); *Thompson v. White*, 391 F.2d 724 (5th Cir. 1968), on remand, 406 F.2d 1176 (1969).

Assuming arguendo that the rule in this state is that the corroboration must provide "probative indications of criminal activity", we find that the facts here amply demonstrate such conduct.

The order granting the motion to suppress is vacated and the case is remanded to the trial court for further proceedings.

HATHAWAY, J., and RICHMOND, C. J., concurring.