618 P.2d 641

**STATE of Arizona, Appellee,**

v.

**Charles G. CANNON aka Michael I Am Christson, Appellant.**

**No. 1 CA–CR 3993.**

Court of Appeals of Arizona,
Division 1,
Department B.

Jan. 24, 1980.

Robert K. Corbin, Arizona Atty. Gen., by William J. Schafer, III, Asst. Atty. Gen., Chief Counsel, Criminal Division and Jessica L. Gifford, Asst. Atty. Gen., Phoenix, for appellee.

Ross P. Lee, Maricopa County Public Defender by Edward C. Voss, Deputy Public Defender, Phoenix, for appellant.

## OPINION

OGG, Chief Judge.

The appellant/defendant, Charles G. Cannon, raises two issues in this appeal:

1.  The defendant was denied his constitutional right to the effective assistance of counsel.

2.  The state failed to prove the defendant was sane at the time of the offense.

The defendant was convicted by a jury of perjury with prior felony convictions and was sentenced to the Arizona State Prison for a term of not less than twelve years nor more than fifteen years. The perjury occurred while the defendant was giving testimony under oath before the securities division of the Arizona Corporation Commission. The defendant testified that he had never been arrested except for minor traffic violations. The state proved that the defendant had six prior convictions for various fraudulent activities.

## THE EFFECTIVE ASSISTANCE OF COUNSEL ISSUE

Prior to trial, a motion was filed by defendant's court–appointed attorney pursuant to rule 11, 17 A.R.S., Rules of Criminal Procedure. The defendant was examined by two psychiatrists to determine if he was able to understand the proceedings against him and to assist in his own defense. Based upon the report of the psychiatrists, the court determined that the defendant was competent to go to trial. One of the psychiatrists, Dr. Otto Bendheim, reported that in his opinion the defendant was feigning insanity. The defendant's counsel then filed notice of the defenses of insanity, lack of specific intent, and no criminal intent. The defendant in his personal summation to the jury argued that, although he was not insane, he had no recollection of being Charles Gregory Cannon, and therefore he had no intent to commit perjury. One day before trial, the court granted the defendant's motion to represent himself, appointing a deputy public defender to aid him in an advisory capacity. On the day of trial, at the state's request, a hearing was held to determine if the defendant knowingly, intelligently and voluntarily waived his right to representation by counsel. Some of the pertinent remarks from that hearing are set out as follows:

THE COURT: First, just for the record, you do understand you have a constitutional right to have a lawyer if you so desire?

THE DEFENDANT: I'm aware of *Gideon vs. Wainwright*, if that's any help.

THE COURT: Do you know the penalties you face as a result of the perjury charge?

THE DEFENDANT: I have been informed of the penalty on this particular charge and I have also been informed—

THE COURT: What is that penalty?

THE DEFENDANT: 10 years to life. I think it was indicated that's only for this instance.

THE COURT: That's by reason of a prior conviction of a felony being alleged.

THE DEFENDANT: So I understand.

THE COURT: All right, fine. And you understand this is quite a technical charge. There is going to be technical points of the law and you are expected to follow the same rules and be subject to the same law as though you had a lawyer representing you and you have to conduct yourself in accordance with the rules of law and the rules of procedure. Are you at all familiar with those?

THE DEFENDANT: I'm versed in the rules of practice and procedure in civil cases before the United States Courts. I'm not totally familiar with Arizona rules. However, Mr. Weber is advising me and if I have questions I will certainly ask him before I step out of bounds.

After hearing all the testimony, the court enlarged the public defender's trial duties by stating as follows:

THE COURT: I think what I'm going to do, by reason of the nature of this charge and the positions, the interpretation of what the law is and what the real issues of the matter are, I'm going to enlarge counsel's power over and beyond that of mere consultation. I'm going to retain him as counsel. I'm sure you can work out the progress of the case with Mr. Christson. If he desires to participate more fully than ordinary, as clients do, I'm sure you can work it out in your discretion and it will be in the best interest of Mr. Christson. I do have a feeling that, from the tenor of the remarks of counsel here, that this is not a case that the Court should permit the waiver of your right to counsel and I think it's in your best interest. I think it's a matter that perhaps your understanding is not such that you could properly represent yourself in a trial of this nature and, for that reason—I'm not going to clip your wings, but I'm going to appoint counsel with you, Mr. Robert Weber there, to act as counsel in the case rather than a mere consultant.

THE DEFENDANT: That deprives me of the right to address the jury?

THE COURT: It does not, but I don't believe that this is a case for waiver of

counsel. That's as a safeguard, to ensure you a fair trial is what I'm trying to do, Mr. Christson.

Later in chambers the trial court further explained his ruling when he stated:

For the record, upon hearing the presentation of Mr. Christson and his answers to the question and his concept of the issues involved, the court is of the opinion he is unable to intelligently waive his right to be represented by counsel and the court further is of the opinion that he really doesn't fully understand the issues and the consequences of his actions. Although he is competent to stand trial, I don't feel that he is competent to make an intelligent waiver of counsel. For that reason I'm appointing Mr. Weber as his counsel.... Mr. Christson, I'm sure, is determined to conduct portions of the trial, not all of it. And if that's the case, his counsel can either do whatever he thinks proper and proceed on that basis. Nobody knows exactly what is going to happen, so we will have to proceed on an ad hoc basis.

The trial proceeded with the defendant's attorney making motions and objections on behalf of the defendant and with both the defendant and his counsel participating in cross–examination. The defendant made the opening and closing arguments to the jury.

The defendant claims the trial court erred when it created a situation of hybrid representation where neither the defendant nor his appointed counsel actually had control of the defense and therefore neither were effective. The defendant contends that a trial court, when faced with the facts in this case, is limited to three alternatives: (1) deny waiver and appoint counsel; (2) allow the waiver of counsel and allow the defendant to act as his own counsel; (3) allow the defendant to represent himself with appointed counsel sitting in an advisory capacity. Defendant cites and relies upon *State v. Castoe*, 114 Ariz. 47, 559 P.2d 167 (App.1976) as a case limiting the discretion of a trial court to the three alternatives set out above. We find no such limitation.

The court in *Castoe* merely held it was not error for the trial court to limit the defendant to the three alternatives. The decision in *Castoe* as it relates to a defendant's right to the assistance of counsel holds that a waiver of counsel need not always be in writing and that an effective waiver of counsel can be accomplished by the defendant's conduct.

It is clearly established that a criminal defendant, both in federal and state courts, has a federal constitutional right to represent himself or, in the alternative, to be represented by counsel. It is also clear that a defendant has no federal or state constitutional right to hybrid representation which would allow the defendant to act as co–counsel along with his court–appointed attorney. *United States v. Swinton*, 400 F.Supp. 805 (S.D.N.Y.1975); *State v. Stone*, 122 Ariz. 304, 594 P.2d 558 (App.1979). While the defendant has no constitutional right to a hybrid representation, it does not necessarily follow that it is error for the trial court to allow it in the appropriate case.

In *United States v. Hill*, 526 F.2d 1019 (10th Cir. 1975), the court in analyzing the federal decisions on the right to hybrid representation made the following statement:

These decisions do not foreclose a trial judge from allowing hybrid representation in appropriate cases; rather they indicate no right to hybrid representation exists."

*Id.* at 1024.

█ Under the facts of this case, we find the trial court's order was an appropriate accommodation of the defendant's constitutional right to counsel and the correlative right to represent himself. The trial proceeded in an orderly fashion, and we find no abuse of discretion.

## THE SANITY ISSUE

█ The defendant's second issue alleges that the state failed to carry its burden of proof beyond a reasonable doubt in showing the defendant was sane at the time of the offense. A defendant is initially presumed

sane. *State v. Sisk*, 112 Ariz. 484, 543 P.2d 1113 (1975). However, if the defendant presents evidence sufficient to generate a reasonable doubt as to his sanity, the burden shifts to the state to prove sanity beyond a reasonable doubt. *State v. Overton*, 114 Ariz. 553, 562 P.2d 726 (1977).

 Counsel for the defendant gave notice of the sanity defense prior to trial. However, at trial such defense was abandoned by both the defendant and his counsel. A jury instruction on insanity was never requested, and there was never a request for a "not guilty by reason of insanity" form of verdict. The defendant argues that despite such abandonment of the insanity defense, the trial court had a duty to act because the defendant's bizarre testimony in and of itself raised the issue of insanity. The defendant testified that when he gave the alleged perjured testimony, he was "obeying an edict of Christ." We agree that some of the defendant's testimony was bizarre; we also believe the jury and trial judge could find the defendant to be an experienced confidence man attempting to hide his guilt behind his new–found religion.

From our review of the record, we find no error, and the conviction and sentence are affirmed.

EUBANK, J., and YALE, McFATE, J., Retired, concur.