655 P.2d 358

STATE of Arizona, Appellee,

v.

Leroy F. TURNEY, Appellant.

No. 1 CA–CR 5360.

Court of Appeals of Arizona,
Division 1, Department B.

Sept. 9, 1982.

Rehearing Denied Nov. 2, 1982.

Review Denied Dec. 7, 1982.

Robert K. Corbin, Atty. Gen. by William J. Schafer III, Asst. Atty. Gen., Chief Counsel, Crim. Div., Linda A. Akers, Asst. Atty. Gen., Phoenix, for appellee.

Espino & Stuhff by Michael V. Stuhff, Flagstaff, for appellant.

## OPINION

GRANT, Judge.

The question presented in this case is whether the trial court properly denied the defendant's motion to suppress evidence seized from his vehicle pursuant to a search warrant. We hold that the motion to suppress should have been granted and accordingly reverse the conviction and sentence.

Leroy F. Turney was charged by indictment with one count of transportation of marijuana, a class 2 felony, and one count of possession of a narcotic drug for sale, a class 4 felony.

The defendant filed a motion to suppress quantities of marijuana, cocaine, and amphetamine pills which were taken from his van pursuant to a search warrant. Following an evidentiary hearing, the motion to suppress was denied.

Ultimately the defendant waived his right to a jury trial and the case was submitted to the court on the basis of documentary evidence and the transcript of the suppression hearing. He was found guilty as charged and, following entry of judgment of guilt, he was sentenced to concurrent minimum terms of 5.25 years imprisonment for transportation of marijuana and 2 years imprisonment for possession of a narcotic drug for sale. We have jurisdiction of his appeal from the convictions and sentences. A.R.S. §§ 12–120.21(A)(1), 13–4031, 13–4033.

At the time the application for the search warrant was presented to the superior court judge,[1] no oral sworn testimony other than the written application and affidavit was presented.[2] Thus, the determinative facts are set forth within the written, form affidavit, in pertinent part as follows:

The undersigned being first duly sworn deposes and says:

That he (has reason to believe)

That (on the person of) Leroy F. Turney white male 5 foot 6 inches 176 pounds white hair blue eyes date of birth April 18, 1925

(in the vehicle described herein) Tan over white over tan 1965 Dodge van Arizona registration PA S–931

In the City of Flagstaff, County of Coconino, State of Arizona, there is now being concealed certain property, namely: A useable amount of a narcotic drug to wit: cocaine and heroin and any items which show dominion and control of the narcotics, and the vehicles. The possession of which property is a felony; is being used as the means of committing a felony and which property is possessed with the intention of using it as the means of committing the crime of possession of narcotics to wit: cocaine and heroin. And that the facts tending to establish the foregoing grounds for issuance of Search Warrant are as follows:

1. On May 2, 1980 at approximately 12:10 p.m. your affiant received a call from the Flagstaff Police Department. They advised your affiant

---

1. The judge who presided at the hearing on the motion to suppress was the same judge who had issued the warrant. At the start of the hearing, both sides specifically agreed to this procedure.

2. See A.R.S. § 13–3914.

that they had received a Crime Stop call from a person wishing to remain anonymous. The caller stated that a white male approximately 54 years old first name Roy driving an older modle [sic] brown and white Dodge van was heading for Fort Tuthill and was in possession of cocaine and heroin.

2. At approximately 12:20 p.m. your affiant and your affiants fellow Officer R. Brissinger began a surveillance of the Fort Tuthill area. At approximately 12:50 p.m. your affiant received further information on the Dodge van. This information was the license number which was Arizona PAS–931.

3. At approximately _____ [illegible in record] p.m. your affiant observed a tan over white over tan Dodge van driven by and [sic] older grey haired man drive into the Fort Tuthill area. When the vehicle parked your affiant approached the driver and identified himself as Officer Weybright Metro Narcotics. Your affiant then advised the driver why he was being stopped and was asked for some identification. At which time the suspect produced a temporary drivers license showing his name to be Leroy F. Turney: At this time your affiant asked Mr. Turney if he went by the name of Roy. Mr. Turney replied that he did. Mr. Turney was then advised of his rights and asked if we could search his van. Mr. Turney then requested that we not search his van without a warrant. Mr. Turney and his van were then transported to the Arizona Department of Public Safety office at 1100 West Kaibab Lane Flagstaff Arizona. Both Mr. Turney and his vehicle were secured until a search warrant could be obtained.

4. Your affiant through the Flagstaff Police Department has received information in the past that Leroy F. Turney was selling narcotics to the students at Coconino High School. This information was obtained by the Flagstaff Police Department on crime calls by a caller wishing to remain anonymous.

5. . Further your affiant has received information from a confidential and reliable informant who in the past has seen Mr. Turney in possession of small amounts of marijuana. Said informant has given your affiant and affiants fellow officers information in the past that has lead [sic] to at least five arrests.

6. Your affiant belives [sic] that the above information contains probable cause to belive [sic] that Leroy F. Turney is in possession of narcotics to wit: cocaine and heroin and that said narcotics are being concealed in a 1965 Dodge van Arizona registration PAS–931. Your affiant pray [sic] that a search warrant be issued.

■ The fourth amendment to the United States Constitution requires that search warrants be issued only upon a showing of probable cause supported by oath. *See also* A.R.S. § 13–3913.[3] This calls for evidence sufficient to support a finding of probable cause by a neutral and detached magistrate. *Johnson v. United States*, 333 U.S. 10, 68 S.Ct. 367, 92 L.Ed. 436 (1948). The evidence must consist of facts or circumstances presented to the magistrate under oath or affirmation. *Nathanson v. U.S.*, 290 U.S. 41, 54 S.Ct. 11, 78 L.Ed. 159 (1933); *see* A.R.S. § 13–3914.

In *Aguilar v. Texas*, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), the Supreme Court set forth a two-part test for examining the adequacy of hearsay reports given to police by informants as a basis for a magistrate's finding of probable cause. The court held that an affidavit must set

---

**3.** A.R.S. § 13–3913. Conditions precedent to issuance

No search warrant shall be issued except on probable cause, supported by affidavit, naming or describing the person and particularly describing the property to be seized and the place to be searched.

forth some of the "underlying circumstances" showing how the informant discovered the pertinent information, and some of the "underlying circumstances" tending to show that the particular informant is credible or that his information is reliable. Subsequently, in *Spinelli v. United States,* 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969), the court considered the *Aguilar* requirements and held that independent supporting information in the affidavit can establish probable cause by strengthening an otherwise unacceptable informant's tip. This independent supporting information may be the results of police surveillance of the suspect occasioned by the informant's tip.

 In the instant case, the informant was an anonymous "Crime Stop" caller, entitled to a somewhat greater measure of credibility than the usual police informant. *See State v. Castoe,* 114 Ariz. 47, 559 P.2d 167 (App.1976); *State v. Collins,* 21 Ariz. App. 575, 522 P.2d 40 (1974). Also, information regarding the suspect's prior criminal reputation was provided and could be considered. *United States v. Harris,* 403 U.S. 573, 91 S.Ct. 2075, 29 L.Ed.2d 723 (1971). Further, a separate confidential informant, alleged to have been "reliable" in the past, had seen the suspect previously in possession of small amounts of marijuana. However, there is no indication as to the dates of those occurrences and they must be considered "stale" for purposes of this particular warrant application. *See State v. Torrez,* 112 Ariz. 525, 544 P.2d 207 (1975) *cert. denied,* 425 U.S. 916, 96 S.Ct. 1517, 47 L.Ed.2d 767 (1976). On balance, we must find that the unidentified informant's tip in this case does not, in and of itself, meet the *Aguilar* requirements, i.e., "underlying circumstances" sufficient to show both 1) how the informant obtained his information as well as 2) the informant's credibility or the reliability of his information. But this does not end our inquiry.

 Under *Spinelli,* other allegations in the affidavit which corroborate the tip must be considered with a view to resolving the following question:

Can it fairly be said that the tip, even when certain parts of it have been corroborated by independent sources, is as trustworthy as a tip which would pass *Aguilar's* tests without independent corroboration?

393 U.S. at 415, 89 S.Ct. at 588, 21 L.Ed.2d at 643.

Less detailed information *from a reliable source* may be used as grounds for a finding of probable cause if independent investigation by law enforcement agents yields sufficient verification or corroboration of the informant's report to make it apparent that the report was not fabricated. *State v. Torrez, State v. Collins.* Even assuming that the informant in the instant case was a "reliable source", we are unable to find the sufficient verification or corroboration required to make it "apparent that the report was not fabricated." *State v. Torrez,* 112 Ariz. at 529, 544 P.2d at 211.

 In *State v. Watkins,* 122 Ariz. 12, 592 P.2d 1278 (App.1979), Division Two of this court said that there is no concensus on the type of information required to corroborate an informant's tip, and no established Arizona rule. The court noted that it was generally agreed that the better practice is to obtain corroboration of *incriminating* details ("probative indications of criminal activity" consistent with the tip information) rather than an accumulation of innocent detail conforming to the original tip. Our reading of *Spinelli* indicates that this is the correct rule, and that the necessary corroborating information may not come from mere innocent activity. Thus, in the instant case, the fact that appellant was a person of the proper description, was driving the proper vehicle at the proper time, to the proper location, and answered to the name of Roy does not provide sufficient corroborating circumstances to cure the defects in the original informant's tip. Such details are comprised of innocent, non-criminal activity, and are insufficient.

In sum, we find that the original informant's tip was defective in failing to provide sufficient "underlying circumstances"

revealing how the informant obtained the information and that the informant was credible or the information reliable. *Aguilar v. Texas.* Further, the independent supporting information in the affidavit, consisting only of innocuous, non-criminal activity, was insufficient to strengthen the otherwise unacceptable tip and raise it to the required level of probable cause. *Spinelli v. U.S.; State v. Watkins.* The trial court committed error in failing to grant the motion to suppress. *See State v. Smith,* 123 Ariz. 231, 599 P.2d 187 (1979).

Reversed.

JACOBSON, J., concurs.

RICHARD M. DAVIS, Judge, Pro Tem., specially concurring.

It seems worth noting for perspective that Justice Hugo Black, who generally favored constructions expanding the effect of the civil liberties amendments, dissented in *Spinelli v. United States,* 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969). He commenced his dissent with the statement, "In my view, this court's decision in *Aguilar v. Texas,* 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 * * * was bad enough." Justice Black suggested that, in effect, the standard was changing from *probable* cause to practically certain cause. The neutral magistrate, who is at the heart of the Fourth Amendment, *Johnson v. United States,* 333 U.S. 10, 68 S.Ct. 367, 92 L.Ed. 436 (1948), is always free to reject the showing made.

I agree with the majority that as the law is currently articulated in *Aguilar* and *Spinelli,* the present warrant is deficient. *Spinelli* refers to *Draper v. United States,* 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959), as setting forth a suitable test, and the information here does not possess the indicia of reliability that the information had in *Draper.* One respected commentator has observed that the totally anonymous infor-

mant carries very little indicia of reliability. 1, W. LaFave, *Search and Seizure,* § 3.4, pp. 595–597 (1978), citing *State v. Chatmon,* 9 Wash.App. 741, 515 P.2d 530 (1973), *In re Betrand,* 451 Pa. 381, 303 A.2d 486 (1973), and *Rohrig v. State,* 148 Ga.App. 869, 253 S.E.2d 253 (1979).

As a novice (and temporary) judge, I feel compelled to note that my concurrence with the issuance of a supression order is based upon *Mapp v. Ohio,* 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961), *State v. Pina,* 94 Ariz. 243, 383 P.2d 167 (1963), *overruled in part on other grounds, Yuma County Attorney v. McGuire,* 111 Ariz. 437, 532 P.2d 157 (1975) and the principle of *stare decisis.* It is not clear to me that either policy or any provision in either the Fourth Amendment or Article 2, § 8 of our State Constitution compels the routine application as a matter of course of the exclusionary rule adopted by the United State Supreme Court in 1914.[1] It seems to me that a windfall of injustice occurs when, for example, a red-handed suspect goes free because the police in the haste of their business may have omitted a critical paragraph from an affidavit in support of the issuance of a search warrant. Although I recognize the quite significant potential for abuse inherent in an anonymous telephone call, I find there are significant indications in the record of the suppression hearing in the present case that the authorities had considerable information on appellant's activities, on a rather current basis. I would see nothing unjust about a system of jurisprudence which would allow the subject cocaine and marijuana to be admitted into evidence.

On the basis stated, I concur.

NOTE: The Honorable RICHARD M. DAVIS, a Judge *pro tempore* of a court of record, has been authorized to participate in this matter by the Chief Justice of the Arizona Supreme Court, pursuant to Arizona Const. art. VI, § 20.

---

1. *Weeks v. United States,* 232 U.S. 383, 34 S.Ct. 341, 58 L.Ed. 652 (1914). The burgeoning literature on the subject includes an article by Prof. W.A. Schroeder appearing at 69 Georgetown Law Journal 1361 (1981) entitled *Deter-* *ring Fourth Amendment Violations: Alternatives to the Exclusionary Rule.* Prior to *Mapp,* Arizona did not apply the exclusionary rule. *See State v. Pina, supra.*